FREDERICK H. GOTTLIEB *vs.* THE FRED. W. WOLF COMPANY, a body corporate under the laws of the State of Illinois.

*Signing Bill of Exception—Extension of Time for Signing —Distinct causes of Action.*

Section 170 of Article 4 of the Public Local Laws of the City of Baltimore, provides that "bills of exception may be signed at any time within thirty days from the rendition of the verdict of the jury, or the findings of the Court upon the issues of fact in said cause, but not thereafter, unless the time for signing said bill of exception shall have been previously extended by order of Court." The Court, within the thirty days, on the 23d of April, 1891, passed an order extending the time for signing the bill of exception "to" the 23d of May, 1891, and on that day the Court further extended the time for signing the bill of exception to the 23d of June, 1891; there were still further extensions. HELD:

Gottleib *vs.* The Fred. W. Wolf Co.

That the Court in passing the order of the 23d day of May, 1891, acted within the authority of the statute, the word "to" being inclusive of the day named.

W. a manufacturer of ice machines appointed G. his agent for selling the same in the City of B. Subsequently W. was incorporated, and G. was retained as the agent of the corporation, the corporation assuming to pay the commissions due on several sales made prior to the incorporation. Afterwards G. sued the corporation to recover commissions on the sale of a machine for account of the corporation. Previously G. had sued the corporation to recover commissions on the sales of machines effected before the incorporation, and in that suit had set up a claim for commissions on the same machine, to recover which the second suit was brought. During the trial of the first suit, the claim for the recovery of which the second suit was brought, was withdrawn, and a verdict was only asked for the commissions alleged to have been earned before the formation of the corporation. HELD:

That the claim on which recovery was had in the first suit, and the claim sued on in the second suit, were distinct causes of action, and such recovery was no bar to the second suit.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiff offered the three following prayers:

1. If the jury find that the plaintiff and Fred. W. Wolf made an agreement under the terms of which the plaintiff was to receive a commission of five per cent. upon ice machines purchased by others from the said Wolf in the City of Baltimore, and that subsequently the said Wolf formed, or caused to be formed, a corporation, which is the defendant herein, and became its president, and that subsequently to its formation and organization the same agreement was made between it and the plaintiff, as had previously been made between the plaintiff and said Wolf, and that subsequently the plaintiff

performed all such services for defendant as he was required to perform in accordance with said agreement, and shall further find that a machine has been purchased by John F. Wiessner, in the City of Baltimore, from defendant, for the sale of which, under the terms of the agreement between plaintiff and defendant, the plaintiff was to receive a compensation of five per cent., then if they further find that plaintiff has not been paid by defendant prior to the institution of this suit he is entitled to a verdict for such sum as the jury find is unpaid and was then due.

2. If the jury find that plaintiff and defendant made an agreement under the terms of which the plaintiff in consideration of services to be performed by him for defendant was to receive a commission upon the price of the second ice machine purchased by John F. Weissner, then if they find that if plaintiff has fulfilled his portion of the agreement, that such second machine has been purchased by John F. Wiessner, and that defendant has not paid him, then plaintiff is entitled to recover such amount as by the agreement he was entitled to receive.

3. If the jury believe from the evidence that the plaintiff and defendant had a meeting at the Hotel Rennert, in the City of Baltimore, in February, 1888, at which meeting a settlement was reached by which the plaintiff's claim for commissions against said defendant was fixed after the allowance by the plaintiff of the expenses of one Kolischer, which were named at $225, and the personal expenses of Fred. W. Wolf, the president of said defendant company, which were named as $638.88, or a total deduction of $863.88, which it was mutually agreed between said plaintiff and defendant, should be charged against said plaintiff's claim, and that thereupon a final settlement was made between the plaintiff and the defendant company through its president, Fred. W. Wolf, agreed to pay to said plaintiff the sum of $2,406.12; and if they

further find that there is still unpaid on said settlement the sum of $1,380, then their verdict must be for the plaintiff for the said sum of $1,380.

The defendant offered one prayer which will be found in the opinion of this Court. The Court below (DUFFY, J.) rejected the plaintiff's prayers, and granted the prayer of the defendant. The plaintiff excepted, and the judgment being against him, he took this appeal.

The cause was argued before ALVEY, C. J., MILLER, IRVING, FOWLER, and McSHERRY, J. ·

*Thomas R. Clendinen,* for the appellant.

On the motion to dismiss the appeal, the following authorities were relied on:

*Horn vs. Buck,* 48 *Md.,* 369; *Nesbitt vs. Dallam,* 7 *G. & J.,* 507; *Balto. Build. Asso. No.* 2 *vs. Grant,* 41 *Md.,* 567; *Trustees of the German Lutheran Ch. vs. Heise, &c.,* 44 *Md.,* 453; *Walsh vs. Boyle,* 30 *Md.,* 266, 267; *Steuart vs. Meyer, et al.,* 54 *Md.,* 464, 465, *&c.; Calvert vs. Williams, et al.,* 34 *Md.,* 672; *Thomas vs. Douglass,* 2 *Johns. Cas.,* 226; *Bellhouse vs. Mellor,* 4 *Hurl. & N.,* 120; *Houghwout vs. Boisaubin,* 3 *C. E. Green,* (18 *N. J. Eq. Rep.,* 315); *Hazlehurst vs. Freeman,* 52 *Ga.,* 244, 245, *&c.; Kendall vs. Kingsley, &c.,* 120 *Mass.,* 94, *&c.; Isaacs vs. Royal Ins. Co., L. R.,* 5 *Ex.,* 296, 299, 300, *&c.; The King vs. Steven & Agnew,* 5 *East,* 244, 255; *Ackland vs. Lutley,* 9 *Ad. & E.,* 879; *Webb vs. Fairmaner,* 3 *M. & W.,* 473; *Watson vs. Pears,* 2 *Camp.,* 294; *Lester vs. Garland,* 15 *Vesey,* 248; *Pugh and Wife vs. Duke of Leeds,* 2 *Cowper,* 714.

In support of the contention that the appellee's prayer was erroneous, and that the principles asserted therein were not applicable to the present case, the following authorities were cited: *Killion, et al. vs. Wright,* 34 *Pa. St.,* 91; *Wood vs. Corl,* 4 *Met.,* 203, 205; *Jay vs. Carthage,*

Gottleib *vs.* The Fred. W. Wolf Co.

48 *Me.*, 353, 354; *Delany vs. Reade*, 4 *Iowa*, 292; *Phillips vs. Berick*, 16 *Johns. R.*, 136; *Badger vs. Titcomb*, 15 *Pick.*, 409; *Rex vs. The Sheriff of Herefordshire, &c.*, 1 *Barn. & Adolph.*, 672; 2 *Black on Judgments, sec.* 747, *and cases cited; Cromwell vs. County of Sac*, 94 *U. S.*, 351; *Stark vs. Starr*, 94 *U. S.*, 477; *Davis vs. Brown*, 94 *U. S.*, 423; *Hall & Loney vs. Schuchardt,* 34 *Md.*, 19, 20, *&c.; Cross, et al. vs. Cohen, et al.*, 3 *Gill*, 274; 2 *Taylor's Ev., sec.* 1513; 1 *Greenleaf's Ev., sec.* 330; *Howard vs. Kimball*, 65 *Me.*, 308, 330 ; *Chase's Case*, 1 *Bland*, 206, 218, 221, 222; *Van Rensselaer vs. Kearney, et al.*, 11 *How. U. S.*, 297, 326; *Foster, et al. vs. The Richard Busteed*, 100 *Mass.*, 409; 2 *Black on Judgments, secs.* 744, 745, 747, 750, 751 ; *Orendorff vs. Utz*, 48 *Md.*, 298; *Ahl vs. Ahl*, 60 *Md.*, 237; *Streeks vs. Dyer and Cadle*, 39 *Md.*, 424; 6 *Wait's Actions and Defences*, 800; *Whitehurst vs. Rogers*, 38 *Md.*, 514, 515, *&c.; Walsh & McKaig vs. Ches. & O. Canal Co.*, 59 *Md.*, 426, 427, *&c.*

*D. K. Este Fisher, W. Cabell Bruce,* and *William A. Fisher,* for the appellee.

In support of the motion to dismiss the appeal reference was had to the following authorities: *Montgomery vs. Reed,* 69 *Me.*, 514; *Bonney vs. Morrill,* 52 *Me.*, 356; *Bradley vs. Rice,* 13 *Me.*, 201; *Nichols vs. Ramsel,* 2 *Mod.*, 281; *Webster, et al. vs. French, et al.*, 12 *Ill.*, 304; *Abel vs. Alexander, et al.*, 45 *Ind.*, 528; *Kendall vs. Kingsley,* 120 *Mass.*, 95; *The People vs. Walker,* 17 *N. Y.*, 503; *People, ex rel. Woods vs. Crissey,* 91 *N. Y.*, 631; *DeHaven vs. DeHaven,* 46 *Ind.*, 276; *Erb vs. Moak,* 78 *Ind.*, 569; *Korbin vs. Kitcham, Adm'r,* 87 *Ind.*, 138.

In support of the instruction given by the Court at the instance of the appellee the following authorities were relied on: 2 *Black on Judgments, sec.* 734; *Warren vs. Comings,* 6 *Cush.*, 104; *Secor vs. Sturgis,* 16 *N. Y.*, 558; *Logan vs. Caffrey,* 30 *Pa.*, 196; *Baird vs. United States,* 96 *U. S.*, 432; *Dugan vs. Anderson,* 36 *Md.*, 584–585;

*Keedy vs. Long,* 71 *Md.,* 392; *Keedy vs. Crane,* 71 *Md.,* 395.

IRVING, J., delivered the opinion of the Court.

Section 170 of Article IV of the Public Local Laws of the City of Baltimore, sub-title Courts, provides: "Bills of exception may be signed in any cause pending in any of said Courts, (the Court of Common Pleas, etc.,) at any time within thirty days from the rendition of the verdict of the jury or the findings of the Court upon the issues of fact in said cause, but not thereafter, unless the time for signing said bill of exception shall have been previously extended by order of Court or by consent of parties." The motion to dismiss the appeal in this case rests on the contention that the bill of exception was not signed within a period of legal extension by order of Court as required by this law.

On the 23d day of April, 1891, before the expiration of thirty days from the date of the verdict, the Court passed an order extending the time for signing the bill of exception "to the 23d day of May, 1891;" and on the 23d day of May, 1891, the Court again extended the time for signing the exception to 23d of June, (1891). On the 19th of June, 1891, the Court further extended the time till the 29th of June, inclusive, and on that day it again extended the time until 11th of July, 1891, inclusive. On the 6th of July, 1891, the bill of exception was filed.

The appellee contends that when the order of the 23d day of May, 1891, extending the time for signing the exception until the 23d of June was passed, "the life of the preceding order had expired," and the Court could not further extend the time. The order of the 23d of April extended the time "*to*" 23d of May, and whether the contention of the appellee is right depends on the proper construction of the word "*to*" in the connection in which

it is used; namely, whether it is exclusive or inclusive of the 23d day of May. If the bill of exception could have been properly signed on the 23d day of May, of course, the order extending the time for signing the same was properly and legally passed. The words "to," "till," and "until" are synonomous, and are sometimes ambiguous and equivocal in the particular connection in which they occur, and are therefore construed as *exclusive or inclusive*, according as the subject-matter about which they are used may show the intention, in using the words, to have been. This was the rule of construction which was applied in *Bellhouse vs. Miller, 4 Hurl. & Nor.*, 120. In that case an order was obtained protecting an insolvent debtor from execution *"until* the 29th of July next,"* and the Court held that the order gave protection *on* the 29th of July, and the word *"until"* was therefore construed inclusively. In *Isaacs vs. Royal Ins. Co., L. R.*, 5 *Exch.*, 296, 299, 300, the ruling in the *Bellhouse Case* (4 *H. & N.*,) was approved and followed, and an insurance policy which protected against fire *until* the 14th of August, was held to cover a loss by fire on the 14*th* *of August*. The word *"until"* in that case being regarded as being intended to include the 14*th* of August. In *King vs. Stevens and Agnew*, 5 *East*, 244, *et seq.*, Lord ELLENBOROUGH held the same rule of construction applicable to the word *"until"* in an indictment. He said "that the words 'to and until' may be either inclusive or exclusive, according to the manifest intention of the person using them;" and as the "framer of the information" evidently intended the word *until* to include the *day named*, it was held as used inclusively. In *Thomas vs. Douglass, 2 Johns. Cases*, 225, the Supreme Court of New York held the word *"until"* used *inclusively* in an order of the Court enlarging the time to plead *until* the *second* day of next term, and decided that a judgment for default rendered on the second day of the term was entered in error, because the party was, under

the order, entitled to the whole of the second day to plead. In several of these cases the question has been *fully and well* reasoned, and we approve both the reasoning and the conclusions reached. Very many other cases of like character and effect could be cited. Some have been cited by appellee where the contrary view has been taken, and especially some in other States where the subject-matter was a bill of exception; but we think the cases on which we rely are better reasoned, and the conclusions reached more in harmony with justice and right which always seeks to promote intention, rather than defeat it by being too technical. We may cite *Hazlehurst vs. Freeman*, 52 *Ga.*, 244, 245; *Kendall vs. Kingsley*, 120 *Mass.*, 94; *Ackland vs. Lutley*, 9 *Ad. & El.*, 879; *Bunce vs. Reed*, 16 *Barbour*, 351; *Dakins vs. Wagner*, 3 *Dowling*, 535, in further support of our view. *Walsh vs. Boyle*, 30 *Md.*, 266; *Calvert vs. Williams*, 34 *Md.*, 672; and *Stewart vs. Meyer*, 54 *Md.*, 464-5, tend to support the view we take.

We are all clearly of opinion that in passing the order of the 23d day of May, 1891, the Court acted within the authority of the statute. Upon that day a bill of exception might properly have been signed, and if so the time for such signing could properly be extended. That the Court did so extend the time notwithstanding the very contention now made here, shows conclusively how the Court understood their own order, and in what sense the word *"to"* was used in it. It follows from what has been said that the motion to dismiss must be overruled.

1. This suit was brought by the appellant to recover commissions for selling an ice machine for the appellee. It was brought as an attachment, and this proceeding is on the short note case, the declaration in which is on the common counts, and a special claim for commissions for selling a machine.

The facts of the case are substantially as follows: Frederick W. Wolf, manufacturing ice machines in

Chicago in 1885, made the appellant his agent for selling his machines in the City of Baltimore, upon terms, about which they differ in their statements to some extent, but not involved in the inquiries we are to make on this appeal. Afterwards, in March, 1887, this appellee was incorporated, and thereafter the business was conducted as a corporation, and the appellant was retained as its agent in the City of Baltimore. Before the formation of the corporation the appellant sold various machines to parties in Baltimore. At the time of the formation of the partnership the commissions on several sales remained unpaid, which the corporation assumed to pay. After the incorporation the appellant claimed that he had sold a machine for the corporation, and it is for commissions for effecting that sale that this suit has been brought. A former suit was brought against the appellee, and in that suit a claim was set up for commissions on the same machine for commissions upon the sale of which the present suit is brought; but during the trial of the former case demand for commissions on the machine now involved was by *leave of the Court* formally withdrawn, and was not passed on by the jury, which was only asked for a verdict for the other claims, which were for selling other machines for Wolf before the formation of the corporation. The withdrawal of the claim now sued for from consideration in that case seems to have been made necessary by the filing of an additional plea during the trial, by way of amendment, denying the corporation, for the purpose of defeating this claim. All these facts and the pleadings and instructions in the former suit were put in evidence at the trial of this case. After the evidence was all adduced in this case, the appellant's counsel offered three prayers, all of which were rejected; and the appellee offered but one prayer, which was granted. It is as follows, and will now be considered:

Gottleib *vs.* The Fred. W. Wolf Co.

"The defendant prays the Court to instruct the jury, that the commissions for which the plaintiff recovered a judgment in the Superior Court of Baltimore City, and the commissions for which the plaintiff is suing in this case, are component items of one entire and indivisible indebtedness, and that their verdict must be for the defendant."

· In granting this instruction the learned Judge of the Court of Common Pleas not only erroneously took on himself the functions of the jury, and decided that the claim here sued on and the one withdrawn from the consideration of the jury, by leave of the Court, in the former case, are identical, but was also in error in ruling that claims for which judgment was obtained in the former suit, and the one sued on in this action, "are component items of one entire and indivisible indebtedness." The claims for which judgment was obtained were for commissions on sales effected by the plaintiff for Frederick W. Wolf, in his individual capacity, and which were assumed by the defendant corporation and recoverable by the plaintiff, who accepted the corporation as paymaster, on the *principle of novation.* The claim now sued on is for service rendered or commissions earned, as is alleged by the appellant, in making sale of a machine for the corporation. The claims were not *indivisible* in any sense, for they existed and were due, if due at all, in different *rights.* If the plaintiff had not accepted the agreement of the corporation to pay instead of Frederick W. Wolf, and thereby released Wolf by actually suing the corporation, he could have sued Wolf individually for what was due from him individually; but he could not have sued Wolf for what the corporation owed the plaintiff. The corporation only was answerable for that; therefore the corporation could have been sued originally in two suits, one for its own debt and one for the debt of Wolf it had assumed

to pay; and when the plaintiff joined the two in one
suit, it was perfectly competent for him, with leave of
the Court, to amend or withdraw the claim for the cor-
poration's individual debt, as was done, and reserve that
for a separate demand. It was only discontinuing his
suit without prejudice, with leave of the Court, *quoad*
that claim which was withdrawn. This, we think, is
the established law in respect to *distinct causes of action;*
and it is because we think the claims recovered in the
first suit, and sued for in this one, are distinct causes of
action, and therefore divisible, that we think there was
error. *Black on Judgments*, in the very section, 734,
relied on by appellee's counsel, says, "that where claims
are distinct, though all might have been recovered in the
first action, it will not bar a second for one which was
not demanded nor proven in the first." It is true that
the claim now sued on was demanded in the first suit,
and had evidence been offered as to it and the jury passed
on it, the plaintiff would now be barred. But it was
not proven. The amended pleadings disabled the plain-
tiff in the former suit from proving it; and he therefore,
with leave of the Court, withdrew that demand; and it
was no longer claimed, or offered for proof in that cause
and the jury did not pass upon it.

That which was done in the former suit was done in
*Killion vs. Wright*, 34 *Pa. St.*, 91, and the Supreme
Court of that State stated the law applicable to such
case so concisely that we quote its language: "Many
claims may be joined in one action, and if, for such, sep-
arate suits be brought, the Court may order them to be
consolidated. But if the claims be counted on separately,
they are separate causes of action, and a suit for one is
no bar to a suit for another. And as a plaintiff is not
bound to count for several claims in one action unless
on an order to consolidate, so when he does so count, he
may, with leave of the Court, withdraw one of them,

and then it stands as a claim not sued on and may be the subject of a future action."

In *Wood, et al. vs. Corl,* 4 *Metcalf,* (*Mass.*) 205, the note sued on had once been counted on in a suit which had proceeded to judgment. But before the case was closed this note was, by leave of the Court, withdrawn, and judgment rendered *only* for another note. Chief Justice Shaw in delivering the opinion on this branch of the case, said: "This was equivalent to a discontinuance, by leave of the Court, as to this note, and such discontinuance is clearly no bar to another suit for the same cause of action." Many other authorities might be cited, but we deem others unnecessary, as the law is so clearly stated in those to which we refer.

The granting of the defendant's prayer necessitated the rejection of all the plaintiff's prayers, and we must now examine them and see if they are right, as we have found the appellee's to have been wrong. The first prayer of the appellant appears to us to present his case properly to the jury. We have been cited to no particular infirmity in it, and we see none. It ought to have been granted. The first prayer being granted the second was unnecessary; and if the first had been granted the rejection of the second would not have been condemned. We see no error in the rejection of the third prayer. The first prayer is all that the appellant needed to put his case before the jury for their verdict on the facts as given them in evidence.

The judgment must be reversed, and a new trial must be awarded.

*Reversed, and*
*new trial ordered.*

(Decided 17th December, 1891.)