# THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY, Appellant, v. GRACY, Collector.

### Division One, February 5, 1895.

1. **Supreme Court:** JURISDICTION: STATE REVENUE LAWS. Suits involving the construction of the state revenue laws are within the appellate jurisdiction of the supreme court.

2. **Practice:** FILING BILL OF EXCEPTIONS. Where time to file a bill of exceptions is granted "until" a named date, the bill is good, if filed on that day.

3. **Taxes:** SCHOOL BUILDINGS: "COTTEY" LAW. No order of the circuit court under the "Cottey" law (R. S. 1889, sec. 7654) is necessary to the assessment or levy of taxes for school buildings, or of any taxes "for schools."

4. ———: ———: ———: STATUTORY CONSTRUCTION. The intent is the life of a law, and should be given effect. In ascertaining it, the words to be construed must be considered with reference to their context.

5. ———: ———. Where estimates returned by school districts, for the purposes of taxation, stated the rate of the required tax levy, but omitted to mention the amount of the several funds which the levy would produce, that irregularity is held immaterial under the curative provisions of the Missouri revenue law (R. S. 1889, sec. 7563, 7708), where the valuation of the property to be assessed is already fixed, so that the omitted item can be ascertained by a simple calculation.

6. ———: ———. Where an average county rate for a school building tax upon railway property was computed upon a basis which blended the rates (returned in the district estimates) of taxes for school buildings, sinking fund and annual interest, instead of fixing an average rate for each of those items separately, the irregularity was held no ground to enjoin the collection of the tax, where the school law made those funds all parts of the "building fund," to meet one general class of school purposes.

7. ———: ———: EQUITY: INJUNCTION. Equity deals with the substance of transactions; and mere irregularities in proceedings for the assessment or levy of taxes furnish no ground for relief by injunction, where no substantial right of the complaining party has been infringed.

8. **Tax:** ASSESSMENT: STATUTE. A tax based on an assessment made after the date when the tax became payable is not, on that account, subject to be enjoined under the Missouri law.

*Appeal from Newton Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

AFFIRMED.

*Edward D. Kenna, L. F. Parker* and *H. S. Abbott* for appellant.

(1) There was no order of the circuit court of Newton county authorizing the county court to assess, levy and collect the taxes for school building purposes attempted to be levied and assessed by the order of the county court dated August 4, 1890. They are, therefore, absolutely void and illegal. By sections 7653 and 7654 of Revised Statutes, 1889, such order of the circuit court was necessary. A county court has no implied power to levy taxes. *State ex rel. v. Railroad,* 83 Mo. 395; *State ex rel. v. Railroad,* 87 Mo. 236; *State ex rel. v. Shortridge,* 56 Mo. 126; *State ex rel. v. Railroad,* 110 Mo. 265; *State ex rel. v. Co.,* 92 Mo. 157; *State ex rel. v. Hager,* 91 Mo. 455; *State ex rel. v. Railroad,* 97 Mo. 296; Constitution, sec. 11, art. 10. (2) The rate of nine cents per $100 valuation for school building purposes, as attempted to be levied, was not obtained in the manner provided by section 7732, Revised Statutes, 1889, giving the county court authority for, and prescribing the manner of, levying a tax for such purposes. It is excessive, illegal and void. Neither were the estimates of the school board made out in compliance with section 8000, Revised Statutes, 1889. *State ex rel. v. Railroad,* 110 Mo. 265. (3) The order for the levy, assessment and collection of the taxes for 1890 was made August 4, 1890. By statute,

the plaintiff's taxes were due and payable June 1, 1890. Sec. 7736, R. S. 1889. At that time there were no taxes levied against it and no liability. The plaintiff was entitled to all the time given by statute in which to pay its taxes.

*John T. Sturgis* for respondent.

(1) The bill of exceptions in this cause was not filed in time, and is not part of the record. The bill itself recites that the plaintiff was allowed "until the sixteenth day of June, 1892," to file the same. The bill of exceptions must be accepted as an absolute verity. *Christian v. Wight,* 19 Mo. App. 165; *Wells v. Lea,* 20 Mo. App. 352; *Crosby v. Clary,* 43 Mo. App. 222; *State v. Blunt,* 110 Mo. 322. When time is granted "until the sixteenth," it is too late to file it on that day. *Corbin v. Ketcham,* 87 Ind. 139; *Kendall v. Kingsley,* 120 Mass. 95; *Webster v. French,* 12 Ill. 304; *People v. Walker,* 17 N. Y. 503; *People v. Crissey,* 91 N. Y. 631. The vacation order, extending the time to file bill of exceptions "until May 17," expired on May 16, and the second order, extending the time, made on May 17, is void. *State v. Scott,* 113 Mo. 559; *State v. Mosley,* 116 Mo. 545–547. And, if not void, would expire on the fifteenth of June. (2) No motion for new trial "is copied or set forth in the bill of exceptions filed in the lower court," nor does "the bill of exceptions so filed contain a direction to the clerk to copy the same." (R. S. 1889, sec. 2304.) It avails nothing that it is copied by the clerk into the transcript. *McNeil v. Ins. Co.,* 30 Mo. App, 306; *Story v. Ragsdale,* 30 Mo. App. 196; *State v. Griffin,* 98 Mo. 672; *Arnold v. Boyer,* 108 Mo. 310; *Jefferson City v. Opel,* 67 Mo. 394; *Perkins v. Bakrow,* 39 Mo. App. 331; *Donaldson v. Thompson,* 25 S. W. Rep. 358; *Kohn v.*

*Lucas*, 17 Mo. App. 31; *Ins. Co. v. Hill*, 12 Mo. App. 148. No error is assigned on the record proper and none will be considered, especially as no motion in arrest was filed. Cases cited *supra*. (3) Before an injunction to restrain the collection of taxes will be granted, equity requires that the taxes that are justly due must be paid. *Johnson v. Duer*, 115 Mo. 366; *Arnold v. Hawkins*, 95 Mo. 569; *Dickhaus v. Olderhide*, 22 Mo. App. 76; *Bank v. Kimball*, 103 U. S. 732. (4) Injunction waives all irregularities or informalities of assessment and levy. Only matters affecting the substantial justice of the tax itself or the very right to levy the tax in question will be considered. *Railroad Tax Cases*, 92 U. S. 575; *Valle v. Zeigler*, 84 Mo. 214, 217; *Myer v. Rosenblatt*, 78 Mo. 496; High on Injunctions, sec. 355; Cooley on Taxation, secs. 775, 776; *Chicago v. Frary*, 22 Ill. 34; *London v. Wilmington*, 78 N. C. 109; *Union Trust Co. v. Weber*, 96 Ill. 346. (5) Injunction will not lie to restrain the collection of a tax on an illegal and void levy as alleged in the petition in this case. *McPike v. Pew*, 48 Mo. 525; *Sayre v. Tompkins*, 23 Mo. 443; *State v. County Court*, 51 Mo. 368. (6) Taxes "for schools" may be assessed, levied and collected without any order of the circuit court or judge thereof. Taxes for "building purposes," for "sinking fund" and for "annual interest" are taxes "for schools." Constitution of Missouri, art. 10, sec. 11; R. S. 1889, secs. 7653–7654, 7986, 7987, 8006, 8017; *Railroad v. Lamkin*, 97 Mo. 496; *State ex rel. v. Railroad*, 83 Mo. 395. (7) In levying school taxes on railroads, only the rates are to be averaged. Whether the amount of the tax is set forth in the estimate is immaterial. (R. S. 1889, sec. 7732.) In voting tax for erecting school houses, it is necessary for school boards to make an estimate of the rate only, and only an increase of the rate is voted on. (R. S. 1889, sec. 8006.) The same

is true of "sinking fund" and "annual interest." (R. S. 1889, secs. 7986, 7987.) When the rate is determined the amount is a mere calculation, which anyone can make. The failure to set out the amount of such tax is, at most, a mere irregularity and is cured by Revised Statutes, 1889, secs. 7708, 7563; *Raily v. Gunn*, 76 Mo. 273; *State ex rel. v. Bank*, 25 S. W. Rep. 372; Cooley on Taxation, 283, 284, 290. (8) The fact that the county court made the levy on August 4, 1890, and the tax was due June 1, 1890, is an irregularity caused by a failure of the state board of equalization to complete its labors in time. The county court had to wait till it received the certificate of the action of the state board. (R. S. sec. 7731.) The state board did not complete its labors, and never does, till after June 1. Journal State Board of Equalization, 1890, and other years; R. S. 1889, secs. 7708, 7563; *Black v. McGonigle*, 103 Mo. 200. (9) While the county court correctly added together the rates for the "building fund" proper, the "sinking fund" and "annual interest" since these make one common fund (R. S. 1889, sec. 8017), and, at most, amounts to a mere irregularity, yet this is immaterial in this case, as the aggregate of the rates for "building fund" alone is 2.10c., which, divided by ninety-five—the number of school districts (R. S. 1889, sec. 7732)—gives more than the amount of tax tendered, which was 1.76-81 cents on $100 valuation. *Rockland v. Ulmer*, 84 Me. 503; *Railroad v. Scammon*, 45 Kan. 481; *Johnson v. Duer*, 115 Mo. 379; *Arnold v. Hawkins*, 95 Mo. 569.

BARCLAY, J.—This cause has been twice argued here.

After the announcement of the first judgment (reported, 28 S. W. Rep. 736), a rehearing was granted at the instance of plaintiff. We now agree with the

plaintiff's suggestion, on the motion for rehearing, as to the propriety of determining one of the questions left undecided upon the first hearing.

We have also taken the occasion, afforded by a reconsideration of the case, to modify the first opinion in some particulars.

The suit is to enjoin the collection of certain taxes in Newton county.

The pleadings need not be recited. The issues submitted are purely legal, and involve no disputed facts.

The trial at the circuit was upon an agreed statement, which raised the questions hereinafter discussed. They need not be more specifically defined, as counsel do not differ as to the points properly arising for decision on the merits.

1. The result of the suit depends on the proper construction of the revenue laws of this state. Hence the case falls within the appellate jurisdiction of the supreme court under the constitution. Const., 1875, art. 6, sec. 12.

2. A preliminary point of practice is advanced by defendant to prevent any review of the merits of the controversy.

The bill of exceptions was filed after the term of judgment. Its validity depends on whether an order made by the judge, May 17, 1892 (for an extension of time to file the bill) is good, where the prior order, on which it was based, allowed "until May 17, 1892," to have the bill signed. Defendant asserts that the order is not valid, and that the bill of exceptions should be ignored.

He has cited several decisions which appear to give countenance to that contention. At least two directly bear upon the very point. *DeHaven v. DeHaven* (1874), 46 Ind. 296, and *Corbin v. Ketcham*

(1882), 87 Ind. 138. But there are two cases in another state which assert the counter proposition, namely, that where "until" a certain time is granted to file a motion for new trial, etc., the filing of it at the time named is good. *Board v. Dart* (1881), 67 Ga. 765; *Rogers v. Railroad* (1883), 70 Ga. 717.

Resorting to the language of another, "the word *'until'* is ambiguous, and may be construed either inclusive or exclusive of the day mentioned, according to the subject-matter and the true intent of the document in which it is used." WATSON, B., in *Proudman v. Mellor* (1859), 4 H. & N. *p. 124, following, *King v. Stevens* (1804), 5 East, 244.

In *Kerr v. Jeston* (1842), 1 Dowl. (N. S.) 538, "until" a certain date was given to make an award, and the award on that day was held valid.

The same view has been adopted in an earlier case on similar facts, except that "till" instead of "until," was the word construed. *Knox v. Simmonds* (1791), 3 Bro. Ch. *p. 358.

The word "till," applied to a day for pleadings, was held to include the day specified, in *Dakins v. Wagner* (1835), 3 Dowl. Pr. Cas. 535.

In *Houghwout v. Boisaubin* (1867), 18 N. J. Eq. 315, "until" a certain date was occorded to accept a business proposal; and it was ruled that an acceptance on that date was timely.

In *Gottlieb v. Wolf Co.* (1891), 75 Md. 126 (23 Atl. Rep. 198), time for a bill of exceptions was extended "to" a stated day, and a bill filed that day was held good.

A like ruling was made in Montana. *Penn, etc., Co. v. Schreiner* (1894), 35 Pac. Rep. 878.

In *Isaacs v. Ins. Co.* (1870), L. R., 5 Ex. 296, an insurance "until" a named date, was held to include that date, and protect a loss thereon.

No doubt the word "until" may sometimes have an exclusive effect, indicated by the context, as is illustrated by some of the citations submitted by defendant's counsel. *Webster v. French* (1850), 12 Ill. 302; *People v. Walker* (1858), 17 N. Y. 502; *People ex rel. v. Crissey* (1883), 91 N. Y. 616. To these, *Rogers v. Davis* (1845), 8 Ir. L. R. 399, may be added, where a stay of execution was granted to a defendant "until" a certain day; but the plaintiff was allowed to sue out his execution on that day.

But we think such a meaning should not be put upon that word, when employed with reference to the subject now under consideration.

As many of the cases already cited indicate, the word "until" may readily disclose an intent to include, not exclude, the day mentioned. *Kendall v. Kingsley* (1876), 120 Mass. 95. When that intent is reasonably clear, effect should be given it. That was the obvious meaning of the order considered in the case in hand.

Under our statute, "the time within which an act is to be done shall be computed by excluding the first day and including the last" unless it be Sunday. R. S., 1889, sec. 6570; *Hahn v. Dierkes* (1866), 37 Mo. 574.

That rule for construing statutes furnishes, we think, an analogy for computations of time to file a bill of exceptions. When a party has "until" a certain date to do that act, the filing of the bill on that day should be held sufficient. That opinion was intimated by the second division in *State v. Mosley* (1893), 116 Mo. 547 (22 S. W. Rep. 804), and we have no hesitation now in deciding the point directly.

The same principle would govern an extension of time on the day named in such an order.

3. The first objection to the taxes in question is that there was no order of the circuit court of Newton

county, authorizing the county clerk to assess, levy and collect the taxes for school buildings, as prescribed by the public act generally known as the "Cottey law." (R. S. 1889, secs. 7653, 7654.)

According to the first of the sections cited, no such order is necessary for the assessment or levy of taxes "for schools." The plaintiff concedes that. But it contends that taxes for the erection of school buildings are not taxes "for schools."

The ruling in *State ex rel. v. Railroad* (1884), 83 Mo. 395, is relied upon to support that contention. But it does not seem to us to do so. That case held that a tax for school buildings was not a tax for school purposes, within the meaning of the existing statute (R. S. 1879, sec. 6880) touching the taxation of railroads, which, it was then considered, placed those taxes in different classes. But the statute construed was promptly amended, to avoid the effect of that ruling on the point directly involved. Sess. Laws, 1885, p. 229; R. S., 1889, sec. 7732.

That decision turned on the interpretation of the term "school purposes," as used in the law for the taxation of railways. It applied to those words a narrow meaning which was thought necessary in view of the classification of objects of taxation in other parts of the written law.

But the language of the Cottey law is not "school purposes," but "for schools."

The context in which the latter phrase appears must be considered in endeavoring to arrive at the intent which the language bears.

Intent is the spirit which gives life to a legislative enactment. It is always the duty of the interpreter to seek first the intent, and then to give it effect.

The first section of the Cottey law is of very sweeping and comprehensive character. It is intended to

describe, in a few words, a wide range of subjects: "the state tax and the tax necessary to pay the funded or bonded debt of the state, the tax for current county expenditures and for schools." R. S. 1889, sec. 7653.

It is evident that the words "for schools," in such a connection, were not employed with reference to the details of any scheme of taxation (which was the point of consideration in *State ex rel. v. Railroad*, above noted), but, in a wider, larger sense, to describe all sorts and kinds of taxes, sanctioned by the constitution and laws, for the support of schools.

We, therefore, hold that no order of the circuit court was necessary to support the assessment of the taxes in question.

IV.  It is next urged that the amount of taxes attempted to be levied, assessed and collected, under the order of the county court, was excessive and void, because not reached in the manner demanded by law.

Section 8000 (R. S., 1889) provides that "the school board of each district shall, on or before the fifteenth day of May of each year, forward to the county clerk an estimate of the amount of funds necessary to sustain the schools of their district for the time required by law, or, when a longer term has been ordered by the annual meeting, for the time thus decided upon, together with such other amount for purchasing site, erecting buildings or meeting bonded indebtedness and interest on same, as may have been legally ordered in such estimate, stating clearly the amount deemed necessary for each fund, and the rate required to raise said amount."

Section 7732 prescribes the manner in which school taxes shall be levied upon railroad property. It provides that for the purpose of levying school taxes, and taxes for the erection of public buildings, and for other

purposes, in the several counties of this state, on the roadbed, rolling stock and movable property of railroads in this state, the several county courts shall ascertain from the returns in the office of the county clerk the average rate of taxation levied for school purposes, and also the average rate of taxation levied for the erection of public buildings, and for other purposes, each separately, by the several local school boards or authorities of the several school districts throughout the county. Such average rate for school purposes shall be ascertained by adding together the local rates of the several school districts in the county, and by dividing the sum thus obtained by the whole number of districts levying a tax for school purposes, and shall cause to be charged to said railroad companies taxes for school purposes at said average rate on the proportionate value of said railroad property so certified to the county court by the state auditor, under the provisions of this article, and the said clerk shall apportion the said taxes for school purposes so levied and collected, among all the school districts in his county, in proportion to the enumeration returns of said districts. Such average rate levied for the erection of public buildings, and for other purposes, shall be ascertained, each separately, by adding together the local rates of the several districts in the county levying a tax for the erection of public buildings, or for other purposes, and by dividing the sum thus obtained in each case by the whole number of districts in such county," etc.

One criticism on the mode of taxation of the plaintiff's property in the present instance is that section 8000, above quoted, was not observed in the estimates returned to the county clerk, in that a number of them omitted to state the total amount of the funds required, for the several purposes.

The valuation of the plaintiff's property, subject

to the taxes in question, had been ascertained and assessed by the state board of equalization, and had been duly certified to the county, for the purpose of local taxation. The fixing of the rates of taxation upon the property in the districts was the matter of substance in the estimates of the several districts. The rate of tax for each fund being ascertained, the total amount of the taxes due upon plaintiff's property, as well as upon other assessed property in the districts, became a matter of the simplest arithmetical calculation. The omission to carry out the computation so as to expressly state the amount of the fund, or of the total tax, required for each purpose, when the same is plainly indicated by implication, is certainly no fatal blemish in the proceedings, in view of the curative provisions of the present revenue law. R. S. 1889, secs. 7708, 7563.

We consider the failure to state, in the estimates, the amount of the taxes, or of the several funds required, as in case at bar, a mere irregularity, not going to the substance of the tax, where the rate of the tax is stated, and the valuation of the property for taxation in the several districts is already known and determined.

5. The tax levy is also attacked upon another side. It appears that the county court in computing the average rate for the school building tax levy, added together the rates (as returned in the estimates) for school buildings, sinking fund and annual interest, then divided the sum by the whole number of school districts, and used the resulting rate in levying the tax (for school buildings) upon plaintiff's property. The plaintiff contends that its refusal to pay, and right to enjoin the building tax, thus ascertained, are sustained by the law already quoted, regarding the levy of taxes on railway property; and that the average rate for

each of those funds should have been ascertained separately.

It is insisted that the blending of the items for buildings, sinking fund and annual interest (as returned from some of the districts) rendered the taxes void, in so far as the levy exceeded the average rate estimated for strictly building purposes by the several districts.

To gather the true force of this contention as a ground for injunctive relief, it is necessary to refer to some other sections of our statute law.

The objection of plaintiff to the mode pursued, in making the levy for building purposes is, in effect, that, by the mingling of the items referred to, the funds which it is called on to contribute for public objects may be devoted to a different purpose from that for which they were levied.

The plaintiff admits that, by the mode used in levying these taxes, the computation did not produce a greater total amount of taxes than if the separate computations on each of the items had been made, as it insists they should have been made.

But the answer to plaintiff's contention is that the three items, so joined for the purpose of reaching an average rate (namely, for buildings, annual interest and sinking fund) are levied for one common object, that is, to pay for schoolhouses and their equipment, and that they ultimately form parts of one common fund for school purposes, namely, of the "building fund."

This is very plain from the terms of sections 8016 and 8017, Revised Statutes, 1889. These sections show that the items of tax in question flow, at last, into the same fund for school purposes, and are to be paid therefrom upon one common form of warrant, and for one general class of indebtedness.

In this state of the law, the complaint of plaintiff,

as to the manner of computing the rate for the tax levy in dispute, is one of form only. It has nothing of substance in it. *Rockland v. Ulmer* (1892), 84 Me. 503 (24 Atl. Rep. 949). Such an irregularity in the proceedings for imposing taxes could not justly be treated as forming any solid ground for the interference of a court of conscience by way of injunctive relief, at this stage of their enforcement. Equity will not relieve by injunction against mere informalities of tax procedure, where no substantial right of the complaining party has been infringed. *Warden v. Supervisors* (1861), 14 Wis. 618; *State Railroad Tax Cases* (1875), 92 U. S. 575; *Huck v. Railroad* (1877), 86 Ill. 360; *Kansas City, etc., Railroad Co. v. Scammon* (1891), 45 Kan. 481 (25 Pac. Rep. 858).

Equity deals with the substance of transactions, and treats their forms as of secondary importance, unless the positive law (which it is bound to follow) otherwise ordains.

In Missouri the statute law, by its clear language in sections 7563 and 7708, requires us to ignore any mere irregularities of tax procedure; and thus supports the rule in equity already stated.

We, therefore, consider that this objection of plaintiff to the taxes in question must fall to the ground.

6. It is finally objected that the order for the levy, etc., of these taxes for 1890 was made, August 4, in that year, when the taxes were due and payable, June 1, 1890, according to section 7736, R. S. 1889.

This delay in the county tax proceedings was, no doubt, caused by delay in the action of the state board. At all events, it is unimportant under the terms of section 7563, already alluded to, which are as follows, viz.:

"No assessment of property or charges for taxes thereon shall be considered illegal on account of any informality in making the assessment, or in the tax

lists, or on account of the assessments not being made or completed within the time required by law.''

The closing lines of that section seem designed to meet the very irregularity now complained of. In view of the plain command of this statute, this irregularity should be disregarded. Compare *Nickle v. Douglas*, (1874), 35 U. C. Q. B. 126, where a similar rule is declared, without the aid of a statute.

7. In our view of the case, as above expressed, it becomes unnecessary to deal with the subject of the sufficiency of the tender of taxes made by the plaintiff as a preliminary to the present suit, or to consider whether the remedy asked by plaintiff might not properly be denied upon other grounds.

8. Some other questions of practice have been raised by defendant, looking to an abridgment of our review of the matters discussed in the plaintiff's briefs on this appeal. But, as we conclude that the judgment of the circuit court should be affirmed on the merits of the law issues raised by the plaintiff, we deem it needless to go into any questions as to the correctness of the procedure followed in attempting to bring the substance of the controversy under our scrutiny.

The judgment of the learned trial judge was correct. It is affirmed. BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur.