**BANTUELLE v. BANTUELLE.**

No. 6221.

Court of Civil Appeals of Texas. Texarkana. June 7, 1946.

Rehearing Denied June 13, 1946.

Lincoln, Harris & Kennedy, of Texarkana, for appellant.

Rodgers, Levee, Blalock & Rodgers, and Shaver, Stewart & Jones, all of Texarkana, for appellee.

WILLIAMS, Justice.

In this divorce action filed by Vidar Lou Bantuelle she was awarded the divorce, the custody of their two children with a provision for their support, and property rights adjudicated.

Fred Bantuelle, the defendant below, appeals from the judgment entered December 10, 1945, in the 102nd District Court of Bowie County, Texas, which term expired by operation of law on October 20, 1945, unless it was properly extended. The extension order, which, omitting formal parts, reads: "On this the 19th day of October, 1945, this cause being in the process of trial, and on account of the end of this term of court being so near that it will be impractical to finish the trial on this date  *  *  *. It is the order of the court that the present term of the 102nd Judicial District Court of Bowie County, Texas, be and the same is hereby extended until the 3rd day of December, 1945, for the purpose of fully completing the trial of this cause, and the term is so extended until that date for that purpose."

The court on December 3, 1945, entered a second order extending the term until December 17, 1945. On December 10, 1945, further testimony was heard and judgment rendered. Appellant recognizes under the provisions of Article 1923, R.C.S., the validity of the first order extending the term, but asserts the second extension entered on December 3, and all other proceedings of the court had thereafter, including the judgment, were void, because the term of court as extended by the first order expired by operation of law December 2, 1945, for the reason that the word "until" would only carry the extension to midnight of December 2d. No general rule can be laid down to determine whether the word "until" is a word of inclusion or exclusion. 52 Am.Jur. p. 351. This is readily apparent from the observation made in Engleman Land Co. v. La Blanco Agr. Co., Tex.Com.App., 239 S.W. 937, and the decisions collated in the Notes under Henderson v. Edwards, 16 A.L.R. 1090. In the latter, the writer of the text states that the numerical weight of authority holds that the word "until" is inclusive when used with respect to a stipulation or court order whereby a party to a suit is given until a specified day to file a pleading or brief, or present a bill of exception. "This ruling seems to be in accord with the popular understanding, for if one is given until a certain day to file a pleading, the average man would assume that the filing on that day would suffice." 16 A.L.R. 1095. The context of the October 19 extension order does not negative the intent that December 3d was included. The proceedings had on December 3 and the further proceedings thereafter affirmatively disclose that the court intended the use of "until" in his order of extension as a word of inclusion. To conclude, which this court does, that "until" was used in the order as a word of inclusion will be giving a liberal construction rather than a restrictive one in line with a general policy that rules of procedure be construed liberally. Engleman Land Co. v. La Blanco Agr. Co., supra; Harvey v. Provident Ins. Co., Tex. Civ.App., 150 S.W. 264; Gottlieb v. Fred W Wolf Co., 75 Md. 126, 23 A. 198.

After their marriage on January 15, 1935, and prior to their final separation, eight purchases of realty were made in the name of Fred Bantuelle, which for brevity will be referred to as the theatre building, residence thereto adjoining, Broad Street store building, the 2302 Wood Street residence, vacant lot adjacent thereto, Main Street residence, Texas Avenue residence, and Omaha, Texas, lot. The recitals in the deeds to above purchases reflect that $200 cash and assumption of the payment of a $4,000 lien note as given for the theatre building, bought December 29, 1937; (2) $500 cash and the execution of an installment vendor's lien note for $700 as given for the residence bought December 19, 1940, which adjoins the theatre building, it being recited that the $500 had been paid out of defendant's separate estate; (3) $3,500 cash as paid for the Broad Street store building, acquired February 21, 1945, it being recited that this was paid out of defendant's separate funds; (4) $5,250 cash as paid for the residence at 2302 Wood Street, bought February 3, 1942; (5) $750 cash as paid for the vacant lot acquired April 21, 1942, it being recited that this was paid out of defendant's separate funds; (6) $1,250 cash and the execution by Fred and Vidar Bantuelle of a vendor's lien note of $2,500 as given for the Main Street dwelling; (7) $1,000 cash as given for the Texas Avenue residence bought June 29, 1937; and (8) $50 cash and execution of vendor's lien note of $75 as given for the Omaha one-half acre, bought March 30, 1935.

The court, according to the findings of fact, allowed defendant his claims that the $500 and $750 above mentioned had been paid out of his separate estate, but found that the $3,500 had been paid out of community funds. And giving effect to such findings, awarded plaintiff as her part of the community realty the theatre building and the adjacent dwelling and awarded to defendant as his part of the community realty the remaining parcels except the 2302 Wood Street property which was impressed with homestead rights for his wife and children.

Points 2 to 7, inclusive, attack the sufficiency of the evidence to support that portion of the judgment which decreed above-mentioned realty to be community,

and the court's finding that $3,500 out of community funds were paid on the Broad Street store building.

At the time of marriage defendant owned as his separate estate a hotel and some lots in Kilgore, Texas, and several farms in Bowie County. Of and from this estate he received during marriage $15,150 from the sale of four farms, $75 monthly rental from the hotel during the period; oil royalties on a monthly average of $200 and rents from cafe, ice cream parlor, and mattress factory situated on the lots. The realty acquired during marriage yielded monthly rentals after each purchase. During the marriage defendant engaged in various business activities, dealt some in oil activities, and some months prior to separation remodeled and repaired the Broad Street store and opened a business which he still operated at the time of trial.

■ Article 4619, R.C.S. of Texas, Vernon's Ann.Civ.St. art. 4619, provides: "All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved."

The burden rested upon defendant here to satisfactorily prove what effects on hand at the time of the divorce were his separate estate. 23 T.J., Husband and Wife, § 307; Rippy v. Rippy, Tex.Civ.App., 49 S.W.2d 494, and authorities there collated; 42 C.J.S., Husband and Wife, § 572, p. 109. With the exception of the revenue from the oil royalty runs and the sales of the realty out of defendant's separate estate, all the rents, profits, earnings and other revenues received from all realty and business enterprises during the marriage became the community property of this couple. 23 Tex.Jur., Husband and Wife, §§ 96, 98, 100, 102, and 91.

■ The realty in controversy was acquired and fully paid for during their marriage, including all deferred lien payments, with checks given by defendant on his checking account in either the Kilgore or Texarkana bank, or with cash out of his pockets. The court found "that during the marriage, the monies belonging to the community estate and the defendant's separate money, if any he had, were so commingled that it is impossible to determine which is community funds and which is the separate funds of defendant." The decree with respect to the community realty grounded upon this finding and Article 4619, R.C.S., is sustained. Rippy v. Rippy, supra; Smith v. Buss, 135 Tex. 566, 144 S.W.2d 529, 532; Wagnon v. Wagnon, Tex.Civ.App., 16 S.W.2d 366, 371, writ refused.

The bank records of the Kilgore bank from January 16, 1935, to October 11, 1945, and of the Texarkana bank from September, 1937, to August, 1945, counting deposits of $350 or over, totaled $85,000 and withdrawals of approximately the same amount. During marriage he borrowed $9,000 which defendant claimed he used to purchase some of the property and later paid back out of the sale of some of his separate estate. His claim that only the oil royalty checks were deposited in the Kilgore bank is disputed by his wife who claims rentals also went there. This record does not disclose the respective dates of the sale of his separate estate. The bank records that were introduced dealt only in amounts without otherwise disclosing what the various deposits represented or where the funds may have come from. In explanation of how he handled the Texarkana revenues, defendant testified: "When I got too much money, if it were more than my living expenses, I deposited it." "I don't know how much." "It is all mixed together." "I just deposited money as I received it, and if I had to check it out to pay off some debt or taxes I did it." His history of various other transactions were in a similar indefinite vein.

■ At the time of their final separation on August 14, 1945, this couple and their two children, Anita Ann, born June 24, 1936, and Charles Freddie, born December 22, 1937, occupied as their homestead the premises situated at 2302 Wood Street, Highland Park Addition in Texarkana. This was decreed to be community property and set aside to the wife, including

all furniture therein, except the furniture in the room occupied by defendant, "to be used by her and the two children as a homestead until the youngest of said children reaches the age of 21." In the division of the personalty she was awarded $350 and an auto, and defendant all of the remainder. "The present care, custody and control of the two children were awarded to plaintiff (the mother) and defendant was required to contribute to plaintiff $100 monthly for the support of the two children until the youngest reaches 16 years of age, or until the further orders of this court." It was within the province of the trial court to impress the premises at 2302 Wood with above homestead rights as stated and to require a $100 monthly contribution on part of defendant for benefit of the two minors, and it was not an abuse of discretion in the court so decreeing. 15 T.J. § 115, p. 592; 27 C.J.S., Divorce, § 294, p. 1124; Arts. 4638 and 4639a, R.C.S., Vernon's Ann.Civ.St. arts. 4638, 4639a; Barry v. Barry, Tex.Civ.App., 162 S.W.2d 440, 442; Tiemann v. Tiemann, 34 Tex. 522; Sims v. Sims, Tex.Civ.App., 62 S.W.2d 495; Housewright v. Housewright, Tex.Civ.App., 41 S.W.2d 1071, writ refused. The realty awarded the wife yields a gross monthly rental of $105. She had no trade or profession and no other source of income, and no other property other than $350 cash and an auto awarded her in the decree. Defendant's income from his realty, his business and ability of earnings were more than ample to make above contribution for the support of his children.

■ The failure of the court in its decree to provide defendant reasonable opportunity of visitation with his children, complained of in the 11th point is overruled. Hays v. Hays, Tex.Civ.App., 123 S.W.2d 968; Dickinson v. Dickinson, Tex. Civ.App., 173 S.W.2d 549, and decisions collated on page 551.

■ The realty awarded to the wife as her part of the community is fully described in the decree. The award into defendant after describing each tract awarded him as his part of the community and the two tracts found to be his separate estate acquired during marriage, closes

with the clause "as well as all other real estate wherever situated, in the name of defendant." It is thought that this concluding clause will include any realty owned by defendant not above mentioned that he owned prior to his marriage. Defendant's pleadings contained no prayer that any additional tracts be decreed to be his separate estate; neither pleading nor evidence furnished any field notes description of any additional tracts. The clause in the court's decree that "defendant take nothing by his cross-action" in the construction placed thereon by a reviewing court would be directed and limited to the denial of such relief sought in the cross-action, and here to a denial of his prayer for divorce, that being the sole relief sought by him in his cross-action.

The other matter complained of does not present reversible error.

The judgment is affirmed.