## MILLS v. CENTRAL OF GEORGIA RAILWAY COMPANY.

The court erred in sustaining the demurrer to the petition in this case.

JUNE 17, 1913.

Action for damages. Before Judge Sheppard. Effingham superior court. February 14, 1912.

Elizabeth Mills brought suit against the Central of Georgia Railway Company, to recover damages for the alleged tortious killing of her minor son. The petition alleged, in substance, as follows: Her three minor sons were walking down the defendant's line of railroad, which was not enclosed, to their work outside of the corporate limits of the town of Eden, where the public traveling as footmen have always had full access and free use of the same in traveling to and upon the railroad, walking between the track or in the footpath at the end of the cross-ties, which fact was well known to the servants and employees of the defendant. The oldest son, 15 years of age, found lying upon the track between the rails a railroad signal torpedo, a distance of about "fourteen telegraph poles" from Eden. The torpedo was such as is fastened upon the top of the iron rails to give signals and warning to engineers and trainmen. The "torpedo being a pleasing and attractive looking object and harmless in its appearance," the oldest son picked it up and tried to open it. Being unable to open it, after walking the distance of about "six telegraph poles," he saw and picked up an iron nut or tap, and, placing the torpedo on one of the iron rails, hit it with the tap or nut for the purpose of breaking it open, which caused the torpedo to explode, and another son of plaintiff (Ruby) eight years of age, standing about eight feet away, and not aware that he was in any danger or that any harm could be done by his brother trying to break open the torpedo, was struck by a piece of it, which penetrated his bowels and caused his death. At the time of his death the boy was in good health, strong and well developed. He was earning twenty-five cents per day at the time of his death, and his earning capacity would have steadily increased until he would have earned $1.50 per day by the time he arrived at the age of 21 years. The boy had no father living at the time of his death, and the plaintiff was in part dependent on his earnings for her support and maintenance. The torpedo was of a kind manufactured expressly for railroad use

in train signaling, and for no other purpose, and used by the defendant as signals in the operation of its trains, and was composed of dynamite, or other highly dangerous explosives, enclosed in an oval top tin box sealed up, to which was attached a leaden strap projecting about three inches on each side of the box for the purpose of strapping it to the top of the iron rails, to be exploded by the next passing train. The torpedo that produced the death was found south of the south end of the siding or passing track at Eden, and at a point where it had been the custom of the defendant's servants to place signal torpedoes. It was placed on defendant's roadway by its servants in a wanton and careless manner prior to the homicide. The defendant was careless and negligent in operating its trains on its roadway longer than its passing tracks, and in blocking the main line, and in permitting its servants and employees to carelessly and wantonly place torpedoes on its roadway at the points named, and in placing the torpedo on the track, and in wantonly leaving the same where it was found by the plaintiff's sons.

To this petition general and special demurrers were filed. One ground of demurrer was that the petition shows that the injury complained of was not the proximate result of defendant's negligence; another was that the petition does not show by what agent and employee, and when, the torpedo was left on defendant's roadbed, and how long it remained there. The court sustained the demurrer and dismissed the petition; and the plaintiff excepted.

*J. H. Smith,* for plaintiff. *H. W. Johnson,* for defendant.

HILL, J. (After stating the foregoing facts.) We think the petition made such a case as was sufficient to withstand the demurrer It was alleged that the torpedo which caused the death of the plaintiff's son, who was eight years old, was placed on defendant's roadway by its servants in a wanton and careless manner prior to the homicide; that the brother of the deceased, who was 15 years old, picked up the torpedo lying in the track on which they were walking to their work, as was customary with pedestrians, and, placing it on one of the iron rails, hit it with an iron tap or nut for the purpose of breaking it open, never having seen one, and not knowing that it was dangerous or liable to do any harm. The younger brother was standing 7 or 8 feet away, and when the torpedo exploded was struck by a piece of it, which caused his

death. The facts are more fully set out in the foregoing statement. One ground of the demurrer is that the petition shows that the injury complained of was not the proximate result of the defendant's negligence. It is alleged that the death of the plaintiff's son was caused by the negligence and carelessness of the defendant, its agents and employees, by carelessly and negligently leaving or allowing a dangerous and highly explosive torpedo to be thrown down and allowed to remain on its road-bed. What is or what is not the proximate cause of an injury must in all cases be determined from the evidence. *Central Ry. Co.* v. *Tribble,* 112 *Ga.* 866 (38 S. E. 356). See also *Smith* v. *Atlantic Coast Line R. Co.,* 5 *Ga. App.* 219, 220, 221 (62 S. E. 1020). In the case of Harriman v. Pittsburgh Ry. Co., 45 Ohio St. 11 (12 N. E. 451, 4 Am. St. R. 507), it was held: "The servants of a railroad company negligently placed and left an unexploded signal torpedo at a point on the company's track which the public, including children, had long been accustomed to use as a crossing, with the acquiescence of the company. The torpedo was picked up by a boy nine years of age, while so using the company's track, and was carried by him into a crowd of boys near by, and, being ignorant of its dangerous character, he attempted to open it. The torpedo exploded, and the plaintiff, a boy ten years of age, was injured by the explosion. Under this state of facts, it was held that the negligence of the company's servants was the proximate cause of the injury suffered by the plaintiff; and the fact that the torpedoes were wantonly placed on the company's track by its trainmen, when there was no necessity for using them at that time and place, did not exempt the company from liability to the plaintiff." See also Railway v. Shields, 47 Ohio, 387 (24 N. E. 658, 8 L. R. A. 464, 21 Am. St. R. 840, and discussion of this case in 31 Cen. Law J. 169, and cit.) ; Juntti v. Oliver Iron Mining Co., 119 Minn. 518 (138 N. W. 673, 42 L. R. A. (N. S.) 840) ; Akin v. Bradley Eng. &c. Co., 48 Wash. 97 (92 Pac. 903, 14 L. R. A. (N. S.) 586) ; Powers v. Harlow, 53 Mich. 507 (19 N. W. 257, 51 Am. R. 154). In the case of Carter v. Columbia R. Co., 19 S. C. 20 (45 Am. R. 754), it was held: "A railroad company is not liable in damages for the death of a man caused by the explosion of a torpedo with which he intermeddled while walking on the railroad track, and which had been placed there by the company as a danger signal to approaching

trains." But it will be observed that in the Carter case the person who picked up and caused the torpedo to explode was a "man" and not a mere boy, as in the instant case. And it definitely appeared in that case that the torpedo had been placed by the railroad company as a danger-signal. Mr. Chief Justice Simpson, in delivering the opinion in that case, said: "It would, no doubt, require a much stronger case to make out negligence as to a trespasser than is required in ordinary cases; but we have found no case which goes to the extent of declaring that a trespasser has no protection. . . Suppose the defendant, knowing that its track was being trespassed upon by parties unauthorizedly appropriating it as a track or road to walk upon, and to break up this use, had placed a dangerous explosive instrument thereon, . . with no notice or advertisement to the public of the facts, and a traveler, though technically a trespasser, had been injured thereby; could it be claimed as a legal proposition that under such circumstances the company would be exempt from liability? We think not."

In 3 Elliott on Railroads, § 1260, it is said: "It has been held that a railroad company is liable for an injury to a boy caused by the explosion of a torpedo which had been left upon the track by its employés at a place where children were in the habit of going with the knowledge and acquiescence of the company, and was picked up by another boy who was with him." The general rule is well settled that children are only required to exercise such care for their own safety as may reasonably be expected in view of their age and condition. The question is usually one for the jury to determine, but the child may be so young that the court may say that he was non sui juris and incapable of contributory negligence, or so old and intelligent that he was guilty of contributory negligence as a matter of law, where it is clear that he did not exercise such care as should reasonably be expected of children of the same age and intelligence under the circumstances. There is no fixed period below which children are non sui juris and at which they at once become sui juris. Id. 1261. In the case of Sullivan *v.* Creed (1904), decided in the Irish High Court of Justice and Court of Appeal, 2 British Ruling Cases, 139, the defendant had left a gun loaded and at full cock, standing inside of a fence on his land, beside a gap from which a private path led over defendant's lands from the public road to his house, and the defendant's

son, aged between 15 and 16, coming from the road to the gap on his way home, found the gun. He went back with it to the public road, and, not knowing that it was loaded, pointed it, in play, at the plaintiff who was on the road. The gun went off, and the plaintiff was injured. It was held by the King's Bench Division, and by the Court of Appeal, that the defendant was liable for the injury. In delivering the opinion, Palles, C. B., said: "One is responsible not only for the necessary, but for the reasonably probable, consequence of his acts. Now, ought the defendant to have so foreseen? In other words, would a reasonable man, placed in the circumstances in which he was, and giving such consideration to the question whether he should leave his gun in the place in which he did leave it, have so foreseen? As a general rule, such a question is one of fact, and ought to be submitted to the jury. . . I hold that any one who is in possession of a dangerous instrument owes a duty to the public, or at least to such members of the public as are reasonably likely to be injured by its misuse, to keep it with reasonable care, so that it shall not be misused to the injury of others."

In another English case, that of Clark v. Chambers (1878), 3 Q. B. D. 327 (19 Eng. Rul. Cases, 28), the defendant, without legal right, had put a chevaux-de-frise across a private roadway to prevent vehicles from coming up to his land. Some person, without his authority, removed part of the barrier to the footpath, and on a dark night the plaintiff, while lawfully using the road, knocked against one of the spikes and injured his eye. The defendant was held liable, although the immediate cause of the accident was the act of the stranger who had placed the barrier on the footpath. Cockburn, C. J., said: "It appears to us that a man who leaves in a public place, along which persons, and amongst them children, have to pass, a dangerous machine which may be fatal to any one who touches it, without any precaution against mischief, is not only guilty of negligence, but of negligence of a very reprehensible character, and not the less so because the imprudent and unauthorized act of another may be necessary to realise the mischief to which the unlawful act of negligence of the defendant has given occasion."

There is nothing in the petition to indicate that the torpedo was being used by the railroad company as a signal device when it was picked up. On the contrary, the petition discloses that no train was at the place at the time the torpedo was picked up by the boy,

and its allegations are to the effect that the torpedo was not being used for signal purposes at the time of the injury to the plaintiff's son.

Another ground of demurrer is that the petition does not show by what agent and employee of the defendant, and when, the torpedo was left on its road-bed. We do not think this ground well taken. It is sufficient if it is alleged that the torpedo was wantonly, carelessly and negligently placed there by the servants and employees of the defendant prior to the injury; and this the petition does. Thus, it has been held that an allegation in an action for injuries caused by the negligence of the employees of a railroad company is sufficiently definite though it does not give the names of the agents or servants. Bolin *v.* So. Ry. Co., 65 S. C. 222 (43 S. E. 665). And in the case of Dinard *v.* Omaha &c. Ry. Co., 164 Mo. 270 (64 S. W. 124), in a case where a work-train on which the plaintiff's husband was riding was backing west when it collided with a freight-train from the east, as the result of the negligence of defendant's agents and servants while running the train, it was held that "A motion to make the petition more definite and certain, by specifying the agents and servants whose negligence caused the death of plaintiff's husband, was properly denied."

In view of all the allegations of the petition, we think this case is one for the jury, and should not have been dismissed on demurrer.

*Judgment reversed. All the Justices concur.*

FISH, C. J. I concur in the result, but I do not care, at this time at least, to concur in all of the reasoning of the opinion. I am not prepared to hold or intimate that railroads can not employ torpedoes properly constructed and used for signaling purposes, lest they be removed by trespassing boys and exploded by them. But, as I construe the allegations of the petition, they mean that the torpedo was not at the time in use for signaling purposes, but had been carelessly or wantonly placed or dropped in the middle of the track and allowed to remain there by the defendant's agents or employees who had charge of torpedoes for use as signals, where they knew that the public, including children, were accustomed to pass constantly without objection; and that the boy picked it up and exploded it, and injury resulted therefrom. So construed, the petition sets out a cause of action; and I do not think it necessary to go further in the case. Mr. Justice Lumpkin and Mr. Justice Atkinson authorize me to say that they concur in this view.