## FOLSOM-MORRIS COAL MINING CO. v. DE VORK.

No. 6581—Opinion Filed Feb. 15, 1916.

Rehearing Denied Oct. 10, 1916.

**Damages—Explosives—Master and Servant —Proximate Cause—Liability of Master to Third Persons—Excessive Damages.**

F.-M. was engaged in mining coal, and in connection therewith, maintained an un-inclosed powder house, in which it stored in cans blasting powder. When the powder was practically removed from said cans, the cans containing small quantities of powder were thrown on the ground near said powder house, where infants had access to such cans. From said cans, D. and J., infants, gathered a quantity of powder, which D. and J. carried in cans to about 300 yards from where said powder was obtained. J. strewed the powder carried by him upon the ground, struck a match and applied it to said train of powder, about the time that D. attempted to pick up some of said powder upon the ground. The powder upon the ground exploded, and ignited the powder in the can carried by D., which also exploded and severely burned and permanently injured D. Held, that although such injuries be immediately brought about by the intervening cause of the striking of the match by J., such intervening cause was set in motion by the original wrongdoing of F.-M. in throwing out said cans containing said small portions of powder in a place accessible to D. and J., and F.-M. is liable for the resulting damages caused by said explosion of powder. Held, further that the "powder monkey," employed by F.-M. at said powder house, being present and not objecting to the removal of said powder by said D. and J. from said cans, his action in so doing must be regarded as the negligent act of F.-M. Held, further, that under the facts of this case, a verdict of $5,-000 is not excessive.

(Syllabus by Collier, C.)

Error from District Court, Coal County; Robert M. Rainey, Judge.

Action by John De Vork, by his father and next friend, Joe De Vork, against the Folsom-Morris Coal Mining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

J. G. Ralls, for plaintiff in error.

Fooshee & Brunson and C. M. Treadgill, for defendant in error.

Opinion by COLLIER, C. This is an action commenced by defendant in error to recover damages in the sum of $15,000 against plaintiff in error for personal injuries. Hereinafter the parties will be designated as they were in the trial court.

The material evidence in the case shows that defendant was engaged in coal mining, and in connection therewith maintained a powder magazine or powder house, located on the premises of defendant, within a few hundred feet from the mouth of the coal mine, in which was kept and stored large quantities of blasting powder from which defendant furnished its employes or coal diggers; that said powder was inclosed in large black cans, each of which contained about 25 pounds of powder; that said cans were opened by defendant and the powder partial-

ly emptied therefrom and furnished to its employes; that said cans, still containing small quantities of powder, were thrown out on the ground near and around said powder house; that the place where said cans were thrown after being emptied was unfenced, unprotected, and unguarded; that plaintiff who was at the time about 12 years of age, together with other small boys, obtained from said powder cans small quantities of powder which had been left in the cans by defendant, its agents and employes, and thereby obtained a quantity of powder which was placed in two cans respectively by said plaintiff and one of the other boys, and on the same day, and shortly after the boys had secured the powder, the plaintiff and one of said small boys took said powder so obtained from said powder cans from where they obtained it to a distance of about 300 yards; that plaintiff carried one of the cans containing said powder in his arms, and one of the other boys carried another can containing a large quantity of powder, obtained as aforesaid, and emptied said powder on the ground, stringing it along for some distance, at which time plaintiff was standing close to said powder being emptied on the ground, and attempted to pick up some of said powder so emptied upon the ground to put it in the can carried by him; and that while so doing, the other boy struck a match and stuck it to said powder so emptied on the ground, and said powder instantly exploded, and a flash of the fire therefrom entered said powder contained in the can held by plaintiff in his arms, which said powder instantly exploded. The evidence further shows that as a result of said explosion, plaintiff was burned about the neck, arms, face, down on the side of his chest, on both arms, and from the forearm down through the palm of his hand; that said burns were deep and very severe; that plaintiff was burned through the skin and into what is known as the "deeper structures;" that practically all the skin was burned off; that his left hand was burned worse than the right; that the burns on the left hand were heavy enough to cause the contraction of the left wrist; that his hand was drawn almost to a right angle; that said burns were severe enough to cause the contraction of his muscles, and may have burned the muscles, ligaments and tendons; that the skin had to be taken out of the palm of his hand and off his fingers, and on the back of his hand and arm; that the burns commenced about even with the nipple; that plaintiff's entire face was burned; that he was confined to his bed for five months from the effects of the burns; and that said injuries were permanent. Thereupon plaintiff was exhibited to the jury to be examined as to the scars caused by said burns.

The evidence of defendant shows that it had been in control of the mine for about a month and a few days, and that some of the cans in which powder was left had been thrown out by the former company, and that was the usual way to dispose of said cans: that during the time it had control of the mine, it had used and thrown out about 20 powder cans a day; that defendant had a person employed at the powder house, known as a "powder monkey," whose duties were to deliver the powder to the miners; that people had been accustomed to carrying off the cans for various purposes, and that said "powder monkey" in charge of said powder house, as agent of said defendant, saw plaintiff and the other boys on the day of the accident getting powder, and did not in any way attempt to prevent them from so doing.

Upon conclusion of the evidence of plaintiff defendant demurred thereto, which demurrer was overruled and exceptions saved. Defendant requested 11 instructions, which were refused by the court. The court instructed the jury as follows:

"(4) The plaintiff must make out his case by a fair preponderence of the evidence. If he fails to do this or if the evidence is equally balanced your verdict should be for the defendant.

"(5) If you believe from a fair preponderence of the evidence in this case that the defendant, the Folsom-Morris Coal Mining Company, negligently and carelessly threw out its powder cans with small quantities of powder therein, and negligently permitted them to remain there unprotected, and you further believe that the plaintiff, John De Vork, was a young boy, not of mature years and discretion, and did not understand or appreciate the dangerous condition of the powder, and that the negligence of the defendant company, if you find that it was negligent, was the proximate cause of the plaintiff's injuries, that is, that the plaintiff's injuries were directly caused as a result of said negligence, you will find for the plaintiff; otherwise you will find for the defendant.

"(6) The fact that the plaintiff was injured does not presume negligence on the part of the defendant; but you are to determine from all the evidence in the case whether or not the defendant was negligent.

"(7) Negligence is the failure to do what a reasonably prudent man, under the circumstances, would have done, or doing what a reasonably prudent man would not have done under the circumstances.

"(8) In the event you find for the plaintiff, in arriving at the amount of his recovery you may take into consideration and allow him reasonable compensation for mental and physical suffering, if you find that he suf-

fered any, and you may take into consideration the reasonable and probable effects in the future upon the health of the plaintiff and the effect. if any, upon his ability to earn a living after he reaches the age of 21 years.

"(9) If you believe that any witness has knowingly and wilfully testified falsely to any material fact in issue, you may disregard said witness' testimony, in whole or in part, or you may give it such weight and value as you deem proper.

"(10) You are the sole judges of the credibility of the witnesses and the weight and value to be given to their testimony.   In determining as to the credit you will give a witness, and the weight and value you will attach to a witness' testimony, you may take into consideration the conduct and appearance of the witness upon the stand, the interest of the witness. if any, in the results of the trial; the motives of the witness, if any, in testifying: the opportunity the witness had to observe or to be informed as to the matters respecting which the witness gives testimony and the inclination of the witness to speak the truth, or otherwise, as to the matters within the knowledge of the said witness.

"(11) All these matters being taken into account together with all the facts and circumstances in evidence, it is your province to give to each witness such credit and the testimony of each witness such weight and value as you deem proper."

The jury returned a verdict in favor of plaintiff for $5.000. to which defendant duly excepted.   Motion for new trial was filed by defendant, which was overruled and excepted to, and an appeal perfected to this court.

There are many errors assigned, a large majority of which are predicated upon instructions refused, which we deem unnecessary to set out; the material errors assigned. from our viewpoint, being the action of the court in overruling defendant's demurrer to plaintiff's evidence. and in refusing to grant a new trial.

The material evidence shows beyond question that the cans thrown out by defendant containing the parcels of powder were accessible to plaintiff and other boys, and therefore the first material proposition with which we are met is whether or not such action on the part of defendant was actionable negligence.   We are unable to agree with defendant that under the facts in this case no liability attached to defendant; or, that the case of Pollard v. Oklahoma City R. Co., 36 Okla. 96, 128 Pac. 300, Ann. Cas. 1915A, 140, in which the facts as to the intervening causes are entirely different from those in this case, supports its contention.   In that case it is said:

"It is a well-settled rule of law that requires each person to use such care for the safety and well-being of others in and about the keeping of his property as an ordinary prudent person would have used under all the facts and circumstances of the case, and the failure to use such care is negligence; and he who does. or permits, a wrongful act is liable for the consequences which ensue in the ordinary and natural course of events, although such consequences be immediately and directly brought about by intervening causes, if such intervening causes were set in motion by the first or original wrongdoer."

In Peirce v. Lyden, 157 Fed. 552, 85 C. C. A. 312, it is held:

"Defendant maintained a shed in a railroad yard of about two acres near a schoolhouse in a city, in which he kept open barrels of oil. During the daytime the shed was left unlocked, and for several months children living in the vicinity who played in the yard had been in the habit of stealing oil from the barrels in old cans and making fires with it in the yard, which fact was known to the defendant's watchman.   On one such occasion plaintiff, who was an infant, was burned and injured.   Held. that defendant was chargeable with notice of such practice of the children from its long continuance and the knowledge of his watchman, and that the question of his negligence in keeping the place in such condition in view of the danger of their injury therefrom was for the jury.

In Miller v. Boston & N. St. R. Co., 197 Mass. 535, 83 N. E. 990, it is held.

"In an action for personal injuries, where defendant's negligence is the proximate cause of the injury. the fact that there are other concurring culpable causes will not preclude recovery."

In Mattson v. Minnesota & North Wisconsin R. Co., 95 Minn. 477, 104 N. W. 443, 70 L. R. A. 503, 111 Am. St. Rep. 483, 5 Ann. Cas. 498, it is said:

"The dangerous instrumentality here involved (dynamite) is an extremely hazardous article in the hands of mature persons and a hundredfold more so in the hands of young children.   The degree of care required of persons having the possession and control of dangerous explosives, such as firearms or dynamite, is of the highest.   The utmost caution must be used in their care and custody, to the end that harm may not come to others from coming in contact with them. The degree of care must be commensurate with the dangerous character of the article (Keasbey, Electric Wires [2d Ed.] 269, 270), and is greater and more exacting as respects young children.   As to such, the care required to be exercised is measured by the maturity and capacity of the child.   Sioux City & P. R. Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745.   What would constitute reasonable care with respect to adults might be gross negligence as applied to a young child.   7 Am. & Eng. Enc. Law (2d Ed.) p. 441, and

cases cited. The case at bar, within these rules, is even stronger than the so-called 'turntable cases.' There is nothing so attractive to young boys as articles of an explosive nature, and the greater the volume of sound that may be produced therefrom, the greater the attraction. As compared with an ordinary turntable, dynamite is vastly more attractive, and far more dangerous. Young children are incapable of comprehending the dangers in handling or exploding the same, and their natural instincts urge them into experiments with it whenever it comes within their reach. In view of these considerations, the rule of law imposed upon him who possesses such dangerous articles should be more exacting than in the case of a turntable; and, applying the rule to the facts before us, it is clear that the jury was justified in finding negligence upon the part of defendant. It failed to take proper care of dynamite brought into this vicinity, and left it exposed upon the premises where children had, to the knowledge of its servants, been in the habit of loitering and amusing themselves. * * * In the case of Union P. R. Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434, it appears that the railway company had been operating a coal mine near one of its stations, and was in the habit of depositing the slack upon an open lot between the mine and the station in such quantities that it took fire from the spontaneous combustion and remained in that condition constantly burning. Plaintiff, a young boy, visited the coal mine in company with another boy, and became frightened by threats of other boys who preceded them to the mine, and, in an effort to escape from them, fell into the burning slack, and was severely injured. The company was held guilty of negligence in not properly guarding the pit of slack, and that, under the circumstances disclosed, the plaintiff was not a trespasser. It appeared that people in general visited the mine at pleasure, including boys of the age of plaintiff. There was nothing particularly attractive about the mine, either to adults or children, and certainly nothing attractive in the burning pit of slack. The court in that case cited and commented favorably upon the leading English case of Lynch v. Nurdin. 1 Q. B. 29. In that case it appeared that defendant's servant left the horse and cart he was driving for his master unhitched in the street and unattended, while he entered a house on some business errand. Plaintiff, a boy of seven years, and other children, discovering the horse unhitched, began playing about the cart. Some of the boys got into the cart, while another led the horse down the street. Plaintiff, in attempting to get out of the cart, fell between the wheels, the cart passing over and breaking one of his legs. Defendant, the master, was held liable for the neglect of its servant in leaving the horse in the manner stated, and that his responsibility was not overcome by the fact that the boys were trespassers."

The contention that the plaintiff was a trespasser, is not well taken. In City of Shawnee v. Cheek, 41 Okla. 227, 137 Pac. 724, 51 L. R. A. (N. S.) 672 Ann. Cas. 1915C, 290, it is held:

"A child under seven years of age, or, in the absence of evidence of capacity, between seven and fourteen years of age, is presumed to be incapable of guilt of more than technical trespass, as affecting question of duty of owner in respect to dangerous condition of premises. * * *"

The question of whether or not plaintiff, at the time of the accident was so matured as to appreciate the danger of handling the powder, was under proper instructions of the court, submitted to the jury; and the verdict found was a finding by the jury that plaintiff was not so matured as to understand, and did not understand the danger incident to the handling of said powder.

Whether or not there was evidence sufficient to show liability on the part of defendant was a question for the jury; and this question, we think, was submitted to the jury under proper instructions of the court. In Littlejohn v. Midland Valley R. Co., 47 Okla. 204, 148 Pac. 120, it is held:

"In an action for damages for personal injury, charged to have been caused by negligence, the court should not sustain a demurrer to the evidence and withdraw the case from the jury, unless, as a matter of law, no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish."

We are therefore of the opinion that in permitting the cans containing the powder to be thrown out, as they were, that defendant was liable for such negligence: especially in view of the fact that the "powder monkey" in charge of the powder house was cognizant of the action of the boys in taking the powder, which knowledge of the "powder monkey" must be imputed to defendant, and did not attempt to prevent them from taking the powder. It is true that the injury complained of was brought about by an intervening cause, but such intervening cause was set in motion by the wrongdoing of defendant in throwing out the cans containing the powder. Pollard v. Okla. Cy. R. Co., supra. We are therefore of the opinion that the court did not err in overruling the demurrer to plaintiff's evidence.

The very many requested instructions refused were, where they assert correct rules of law, covered by the general instructions of the court. We therefore do not deem it necessary to specifically point out the vice of the several requested instructions properly refused by the court.

In view of the fact that the injuries received by plaintiff are permanent, and that

necessarily he must have suffered extreme pain, and must go through life terribly disfigured, we are unwilling to say that a verdict of $5,000 is excessive. Upon a most careful consideration of the entire record, we are of the opinion that the court did not err in overruling the motion for new trial.

This cause should be affirmed.

By the Court: It is so ordered.