JEWELL REALTY COMPANY, Appellant, v. DEVERE DIERKS AND DIERKS INVESTMENT COMPANY.—18 S. W. (2d) 1043.

Court en Banc, May 25, 1929.

*Harry G. Kyle* and *Walter A. Raymond* for appellant.

*George Kingsley* for respondent DeVere Dierks.

1068

*J. S. Kirkpatrick* for respondent Dierks Investment Company.

FRANK, J.—Plaintiff claims to have purchased from defendants by written contract certain real estate in Kansas City, and by this action seeks specific performance of that contract. A demurrer to the petition was sustained; plaintiff refused to plead over, suffered judgment and appealed.

The petition alleges, among other things, the following:

"Comes now the plaintiff and files this, its first amended petition, and for its cause of action states that it is now and at all times mentioned herein was a corporation duly organized and existing under and by virtue of the laws of Missouri and as such engaged in the real estate business in Kansas City, Jackson County, Missouri, and in the course of its business constructed, built, erected and operated large hotels, office buildings and other business properties in Kansas City, Jackson County, Missouri;

"That the defendant Dierks Investment Company is a corporation duly organized and existing under and by virtue of the laws of the State of Missouri and as such was engaged in buying, renting, op-

erating and selling real estate and office buildings in Kansas City, Missouri; that on May 26, 1926, the defendant DeVere Dierks was the owner of a ninety-nine year lease on the following described real estate: All of Lots 71 and 72 in Swope's Addition to the city of Kansas, now Kansas City, Missouri, as shown on the recorded plat thereof being the southwest corner of 10th Street and Grand Avenue in Kansas City, Jackson County, Missouri; that he was the owner of the seven-story office building and elevators and machinery therein located on said property and generally and commonly known as the 'Gates Building' in said city; that he was in possession and in charge of the control and operation of said building and said property; that said defendant, DeVere Dierks, being desirous of selling said lease and building aforesaid did on the 26th day of May, 1926, by his sole and voluntary act draw up, execute and deliver to the plaintiff a written agreement and continuing offer to sell said property to plaintiff at any time within thirty-two days and before the expiration of the 26th day of May, 1926; that said written offer or agreement in the language of said defendant is in words and figures as follows, to-wit:

" 'Gentlemen:

" 'As you of course know we are the owners of the Gates Building which we purchased from the Gates Estate and are subject to a ninety-nine-year lease on the ground rental.

" 'We are in a position to sell the building subject to the provisions in our contract with the Gates Estate and will sell it at this time at a price to net us $325,000 cash, not subject to any commission.

" 'We do not care to keep this open longer than until June 26th, but should you be successful in producing a buyer on a basis that will net us $325,000 cash, we will clear up the remaining payments on the Gates Estate on the building itself, at the earliest possible date, and sell on this basis.' "

The petition further alleges that on Saturday, June 26, 1926, plaintiff notified defendant DeVere Dierks that it accepted said offer to sell and was ready, willing and able to perform its part of the contract, but defendant refused to sell to plaintiff and refused to perform his part of the contract; that on Monday, June 28, 1926, plaintiff again notified said defendant of its acceptance of said contract and that it was ready, willing and able to perform, and defendant, at that time, informed plaintiff that he had a better offer and would not perform.

The petition is very lengthy and pleads *in haec verba* the contract by which defendant Dierks acquired the property from the Gates Estate, but we find it unnecessary to consider this contract

in ruling the demurrer. The demurrer is bottomed on the following grounds:

"1. That the two causes of action attempted to be set up in said first amended petition cannot be united in the same petition.

"2. That the two causes of action do not belong to one class as required by law.

"3. That the two causes of action do not affect all the parties to this action and there is a misjoinder of parties defendant.

"4. That the first amended petition does not state facts sufficient to constitute a cause of action against this defendant."

Plaintiff insists that defendant's letter was a written offer to sell the property to it for $325,000, which it had a right to and did accept within the time limited in the letter, while defendant contends that the letter was not an offer of sale to plaintiff, but was a listing of the property with plaintiff for sale at a price which would net him $325,000, and constituted plaintiff his agent to find a purchaser for him.

This letter is the basis of plaintiff's alleged cause of action. The petition pleads the letter *in haec verba,* then proceeds to construe it as an offer to sell the property to plaintiff. In ruling a demurrer to a petition all facts well pleaded will be accepted as true, but the pleader's conclusions on such facts will not be so accepted. Where, as in this case, a cause of action is bottomed on an unambiguous written instrument, in ruling the demurrer to the petition, it will be taken as true that the contract as pleaded is in fact the contract made by the parties. However, the court will not accept the pleader's construction of such contract, but will place its own interpretation thereon. [Donavan v. Boeck, 217 Mo. 70, 83; Meek v. Hurst, 223 Mo. 688, 696, 697.] Stripped of all unnecessary verbiage, defendant's letter to plaintiff reads:

"We will sell at this time at a price net to us $325,000 cash, not subject to any commissions. We do not care to keep this open longer than until June 26, but should you be successful in producing a buyer on a basis that will net us $325,000 cash, . . . we will sell on this basis."

If defendant's purpose was to offer to sell the property to plaintiff for $325,000, why mention the *subject of commissions,* or why inform plaintiff that *if it produced a buyer* by June 26, he would sell on the basis mentioned in the letter? Such questions would not have been involved in an offer to sell the property to plaintiff. This letter is couched in plain terms and can be construed without the aid of extrinsic evidence. Its interpretation is, therefore, a question of law for the court to determine. The meaning of the letter would not have been plainer had it said to plaintiff, we want you to sell our prop-

erty for us at a price that will net us $325,000, after your commission is paid, and if you will produce a buyer at a price that will net us that amount, after paying your commission, we will sell on that basis. No one can read this letter without reasonably concluding that it constituted plaintiff an agent for the purpose of selling defendant's property. We so construe it, and hold that it was not an offer of sale, and plaintiff's attempted acceptance of it as such did not constitute a contract of sale.

Plaintiff contends that although the letter was a contract of agency, there was no fiduciary relationship existing between the parties because of the fact that defendant agreed to accept $325,000 net to him, and for this reason it was not prevented from becoming the purchaser of the property.

This contention is bottomed on the theory that because defendant agreed to accept $325,000 for the property, plaintiff owed him no duty except to get him that amount for the land, and it was no concern of defendant whether plaintiff or some third party purchased the property at the price which defendant had agreed to accept.

There is no merit in this contention for two reasons: (1) defendant never agreed to sell the land to plaintiff, and he cannot be forced to specifically perform a contract he did not make, and (2) to permit an agent for the sale of property to become the purchaser of the property at the list price, would open the door to temptation to commit fraud. An agent, while acting as such, could discover a purchaser at a price in excess of the list price, purchase it himself at the list price, then resell it to the discovered purchaser at the advanced price, and thus reap the fruits of his own fraudulent act. The law closes the door to such temptation by refusing to permit the agent to become the purchaser of property entrusted to him for sale.

In Meek v. Hurst, 223 Mo. 688, Meek, the owner of land in Livingston County, listed the land for sale with Hurst, at a price of $3900 net to Meek. Hurst, the agent, attempted to purchase the land at the list price. Meek refused to sell to him. Hurst brought suit for specific performance and the trial court sustained a demurrer to the petition. On appeal we held that the listing created the confidential relation of principal and agent between Meek and Hurst, and that Hurst could not contract with himself and thus become the purchaser of the land, although the list price was net to the owner. The judgment of the trial court sustaining the demurrer was affirmed.

No doubt the confidential relation of principal and agent which existed between plaintiff and defendant could have been dissolved, and after such dissolution, plaintiff could have lawfully purchased the property, provided a valid contract of purchase had been entered into after the dissolution of the confidential relationship. In Meek

v. Hurst, 219 S. W. 619, 620, the law on this subject is tersely stated thus,

"The burden of proof is upon an agent who is only authorized to sell his principal's property to others, if he claims he purchased it himself, to show by clear and convincing evidence that the relation of principal and agent was dissolved, that he gave his principal full information and knowledge of all material facts which came to his possession while acting as such agent regarding the value or market price of the property, and that with such full knowledge the principal voluntarily, knowing such agent was the purchaser, sold the property to him, freely and without deception of any kind on the part of the agent."

The burden being on plaintiff to show such facts it was necessary that they be alleged in the petition. In Meek v. Hurst, 223 Mo. l. c. 697, 698, we said:

"Unquestionably that fiduciary relation could be brought to an end, and, in that event, Hurst and his sometime agent could deal in relation to the subject-matter at arm's length and make any new valid contract they saw fit to make, but there is no allegation of that sort in plaintiff's bill. It does not allege that the relation of principal and agent, once existing, had come to an end; nor does it allege a new contract in that the agent made all disclosures to his principal by giving him the benefit of full information, and that the principal elected to deal with the agent as purchaser under a valid contract then entered into."

Plaintiff's petition does not bring this case within the rule above stated. It is not alleged that the confidential relationship theretofore existing between the parties had ended or that a valid contract of sale was entered into between plaintiff and defendant. The petition does allege that plaintiff informed defendant that it proposed to purchase the property, but this allegation, standing alone, is not sufficient for reasons heretofore stated. The petition, in this regard, alleges:

"That the plaintiff company, entered into the performance of its part of said contract in good faith; that it informed the defendant, DeVere Dierks that it proposed to purchase said building and lease, and intended to add and construct ten more stories on said building; that it was attempting to finance said lease and said building and discharge the cost of constructing said ten additional stories by negotiating a one million dollar ($1,000,000) loan in the nature of a bond issue on said property and that it fully, fairly and openly informed the defendant DeVere Dierks, and advised with him from time to time as to the progress being made in securing said loan or bond issue; . . . that the defendant DeVere Dierks requested, urged and encouraged defendant to push said loan and bond issue

in order that plaintiff might be able to purchase said property under said contract and finance the construction of said additional stories; that at plaintiff's request, defendant furnished it with blue-prints of the building and itemized statements of the income and expenses of operating said building; that plaintiff through its agents located prospective tenants who were to occupy rooms in said building after it was improved; that plaintiff has been put to great trouble and expense in securing approval of said $1,000,000 bond issue which was secured with the assistance of defendant; that plaintiff will suffer great and irreparable injury unless it secures specific performance of said contract; that it has no adequate remedy at law.''

The prayer is for specific performance of said contract and for $50,000 damages, for expense in securing said bond issue and for loss of rentals, etc., or in lieu thereof damages in the sum of $250,000 for breach of said contract.

The petition does allege that plaintiff fully informed defendant of its intention to purchase, and improve the property, and that it was arranging to float a million-dollar loan on the property for that purpose, but there is no allegation that plaintiff disclosed to defendant knowledge of any facts relative to the value or salability of the property acquired by it during the period of its agency. The relation of principal and agent is one of trust and confidence and the law will not permit the agent to profit by knowledge gained through said relation, at the expense of the principal. The purpose of the law in requiring the agent to reveal such knowledge to his principal, before he will be permitted to purchase his principal's property, which was the subject of the agency, is to put the parties on equal footing regarding the property, and thus remove all temptation or opportunity for the agent to take an unfair advantage of his principal.

Where an agent who is only authorized to sell his principal's property to others, seeks to specifically enforce an alleged contract of sale of the property to himself, his petition, in order to state a cause of action, must, in substance, allege that the confidential relationship has ended and that the agent fairly disclosed to the principal full knowledge of all material facts relative to the value or salability of the property; acquired by him during the period of his agency, and that a valid contract of sale was entered into after the dissolution of the confidential relation. (Authorities supra.)

It does not appear from the petition in this case that plaintiff made any disclosures to defendant regarding the value or salability of the property, or that a contract of sale was entered into after plaintiff notified defendant of its intention to buy the property. If, in fact, plaintiff acquired no such knowledge, the petition should have so alleged. In the absence of such an allegation, the court will not

presume that it did not acquire such knowledge. In other words, if the petition had alleged that plaintiff did in fact reveal such knowledge to defendant, or if it had alleged that plaintiff, in fact, had no such knowledge, in either event, it would then have appeared, as it must, that the parties were on equal footing and in a position to deal at arm's length with each other in negotiating a sale of the property to plaintiff.

The allegations that defendant requested, urged and encouraged plaintiff to procure the one-million dollar loan in order to place it in a position to purchase and improve the property, and aided and assisted plaintiff in arranging for such loan, does not aid the petition.

It is contended (1) that these allegations show that the parties interpreted defendant's letter and plaintiff's acceptance of it as a contract of sale, and for that reason the court should so treat it, and (2) that after defendant by his conduct induced plaintiff to expend time and money in procuring said loan and in arranging to purchase and improve the property, it would be inequitable to permit defendant to repudiate his contract.

We recognize the principles contended for by plaintiff on this score, but they cannot be applied to the facts as alleged in the petition. For aught that appears in the petition, the acts and conduct of defendant which are now invoked against him, might have been induced by plaintiff's violation of its duty as defendant's agent in failing or refusing to disclose to defendant knowledge of all material facts regarding the value and salability of the property, acquired by it during the period of its agency. If plaintiff, while acting as defendant's agent, learned that the property was worth more and could be sold for more than the list price, and had so notified defendant, it is fair to presume that defendant would not have agreed to sell it to plaintiff at the list price, or requested it to procure a loan, or encouraged or assisted it in procuring the loan, in order to enable it to buy the property at the list price. We are not presuming that the alleged contract of sale was induced by plaintiff's failure to make a full and fair disclosure to defendant, but we are holding that when plaintiff seeks specific performance of the alleged contract, of sale to itself, it must, in order to state a cause of action, allege a state of facts showing that such contract was not so induced. This, the petition does not do, and for that reason does not state a cause of action.

Respondent makes the point that plaintiff's alleged acceptance of defendant's letter was not made within the time specified in the letter. The language of the letter is, "We do not care to keep this open longer than until June 26." Plaintiff's acceptance was on June 26, the date named in the letter.

The contention is that the word "until" as it is used in the letter, is a restrictive word and should be construed as exclusive of the date mentioned in the letter. There is no hard-and-fast rule by which to determine whether this word is one of inclusion or exclusion. A strictly literal definition of the word would, no doubt, make it a word of exclusion, but we think it should be construed in relation to the subject-matter and intent of the instrument in which it is used, and from such construction determine whether or not the connection in which it is used indicates an intent to include or exclude the date named.

In a note to the case of Henderson v. Edwards, 16 A. L. R. 1090, 1095, it is said,

"The cases which come nearest to presenting a pure question of law with respect to whether the word 'until' is inclusive or exclusive are those in which, by stipulation or court order, a party to a suit is given until a specified day to file a pleading or brief, or present a bill of exceptions.

"The decisions upon the question are divided, but the numerical weight of authority holds that the word is inclusive when used under such circumstances. This ruling seems to be in accord with the popular understanding, for if one is given until a certain day to file a pleading, the average man would assume that filing it on that day would suffice."

We construe the word "until," in the connection in which it is used in defendant's letter, to be inclusive of the date named in the letter, and hold that if the letter had been an offer to sell to plaintiff, its acceptance thereof on June 26, would have been timely. [State v. Mosley, 116 Mo. 547, 22 S. W. 804; St. Louis & S. F. Railroad Co. v. Grucy, 126 Mo. 472, 28 S. W. 736, 29 S. W. 579; State v. Flutcher, 166 Mo. 582, 66 S. W. 429; Bloch Queensware Co. v. Smith, S. & Co., 107 Mo. App. 13, 80 S. W. 592.]

It is contended by respondents that there is a misjoinder of parties and causes of action.

The claim is that the petition attempts to set up two distinct and separate causes of action, neither of which is common to both defendants. The argument made in support of this contention is that specific performance could not be decreed against DeVere Dierks because he has conveyed the property to Dierks Improvement Company, and that damages could not be recovered against Dierks Investment Company for breach of contract to convey the property to plaintiff, because it was not a party to such contract.

Dierks Investment Company is the holder of the legal title to the property. The petition alleges that said company took title without

paying any consideration therefor and with full knowledge of Dierks' contract to sell to plaintiff. In this situation, if plaintiff's alleged contract of sale with Dierks were valid, said company would then hold the property as a constructive trustee for plaintiff, and could be compelled to perform the original contract by conveying the property to plaintiff. [36 Cyc. 761.] Said company was, therefore, a necessary party to a suit seeking specific performance of the alleged contract of sale to plaintiff.

The petition attempts to charge that defendant Dierks, agreed to sell the land to plaintiff, and thereafter, in order to escape the consequences of his contract, and with the fraudulent intent to cheat and defraud plaintiff, conveyed the property to Dierks Investment Company without consideration. Defendant Dierks was interested in these charges and in the subject-matter of the suit, and was, therefore, a proper, if not a necessary party. ". . . All persons interested in the subject-matter of the suit may properly be joined as parties, and are sometimes necessary parties. This is the fundamental doctrine of equity concerning parties." [36 Cyc. 767, 768.] There is no misjoinder of parties in this case.

Having reached the conclusion that defendants Dierks and Dierks Investment Company were both proper parties to a suit for specific performance, the next question is, if the petition had been otherwise sufficient, would the fact that the prayer asks damages for breach of the contract in event specific performance could not be decreed, render the petition subject to the objection that it attempts to state two causes of action? We think not. The prayer is no part of the petition. If the petition had stated a cause of action for specific performance, the cause of action so stated, would not be destroyed because the prayer of the petition asks for other or additional relief or relief in the alternative. The court could grant the relief, if any, to which plaintiff was entitled under the pleadings and proof.

There are cases in which the court will award damages in lieu of specific performance, but no such case is stated here. The rule in that regard is if the pleadings and evidence present a case which would entitle plaintiff to specific performance, but for some intervening cause which renders specific performance impossible, such as conveyance of the property to an innocent purchaser for value, destruction of the property, etc., the court will retain the bill for specific performance, and award plaintiff damages in lieu of specific performance. [Heron v. Peisch, 240 Mo. 221, 225; Gupton v. Gupton, 47 Mo. 37, 48; Falder v. Dreckshage, 227 S. W. 929, 936.]

Appellant cites numerous cases in support of its contention that the petition states a cause of action. We have read all of these cases

and given each of them due and careful consideration and find that they do not announce anything contrary to what we have said.

The petition does not state facts entitling plaintiff to a decree, either for specific performance or for damages in lieu thereof. The judgment of the trial court sustaining the demurrer to the petition is accordingly affirmed. All concur.