**SCHMIDT v. UNITED STATES and**
seven other cases.
Nos. 3983–3990.

United States Court of Appeals
Tenth Circuit.
Jan. 3, 1950.

Sidney Nye and J. Rodney Stone, Newton, Kan. (Bernard Peterson, Newton, Kan., on the brief), for appellant.

Eugene W. Davis and Malcolm Miller, Assistant United States Attorneys, Topeka, Kan. (Lester Luther, United States Attorney, Topeka, Kan., on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

The eight cases set out in the caption numbered from 3983 to 3990, inclusive, were filed in the United States District Court for the District of Kansas to recover damages against the United States for the death of three children and injury to five others. The eight children were the children of Carolyn Elizabeth Schmidt and Arnold M. Schmidt. Three cases were filed by Carolyn Elizabeth Schmidt as administratrix of the estates of the three deceased children, and the remaining five were filed in her name as mother and next friend of the injured children. The actions were instituted under the Federal Tort Claims Act.[1] The trial court sustained a motion by the Government, the defendant, to dismiss the complaints and actions for failure to state a cause of action. This appeal followed.

There is no disputed issue of fact. During the summer of 1947, the Government's agents at the Fort Riley Military Reservation, located at Fort Riley, Kansas, entered into a contract with Engstrom, Morrison, and others, under which they were granted permission to enter the Reservation to cut, bale and remove prairie grass or hay from a part of the reservation which had been used as a target range during the war. The Military Reservation is located approximately ninety miles east of Newton, Kansas. Arnold M. Schmidt who lived some distance beyond Newton was employed by the contractor as a hay hand to assist in cutting and removing the hay. While so engaged, Schmidt found certain shells, which turned out to be unexploded bazooka shells, on the Reservation. Not knowing their nature and believing that these shells were harmless, he removed some of them from the Reservation and took them with him to his home near Newton as souvenirs. The removal was without the authority or knowledge of the United States or its agents. While his eight children were playing with these shells, one of them exploded, killing three and seriously injuring the remaining five children.

In substance, the amended complaints alleged that the United States, acting through its agents, was guilty of negligence toward the plaintiffs in permitting such high explosive shells to remain promiscuously on the ground without guard or warning to the contractors or their employees who had entered upon the premises pursuant to their contract, and that such negligence was the sole, exclusive, and proximate cause of the death and injuries suffered from the explosion.

It is, of course, axiomatic that the motion to dismiss for failure to state a cause of action admitted all facts well pleaded, but since there is no disputed issue of fact, this principle is not determinative of the issue presented on appeal. Where there is no issue of fact in dispute, the question, whether the complaint stated a cause of action, becomes one of law to be decided by the court.[2]

It may be that it was negligence on the part of the Government to fail to remove the unexploded shells from the Reservation, and also that it was negligence on its part to grant any one a license to go onto any part of the Reservation for a lawful purpose in the absence of having cleared the premises of such shells. For the purpose of this opinion it may be assumed that the Government was negligent in failing to remove these shells and in granting the contractors a license to go upon the premises for the purpose of cutting hay. But did this constitute neg-

1. 28 U.S.C.A. § 2671 et seq.
2. Greiving v. LaPlante, 156 Kan. 196,

131 P.2d 898; Cleghorn v. Thompson, 62 Kan. 727, 64 P. 605, 54 L.R.A. 402.

ligence toward these plaintiffs? Negligence does not impose liability unless it is the proximate, direct, and efficient cause of the injury complained of.[3] The specific question is, was the Government derelict in a duty it owed these children living more than ninety miles from the Reservation, and was the injury the direct, efficient, and proximate result of such negligence. If the failure to remove these shells violated no duty the Government owed these children, they may not recover merely because it was general negligence on the Government's part to fail to remove the shells or because the failure to remove them was a breach of a duty it owed to the workmen under the contract. As stated by Judge Cardozo in the well reasoned case of Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253: "Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right."

And, "In every instance, before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which would have averted or avoided the injury."

This is just another way of saying that the invasion of one's right must be the direct, proximate, or efficient cause of the injury.

Ordinarily an intervening act of negligence which directly causes an injury becomes the proximate cause thereof and cuts off and removes the original act of negligence as grounds for an action for damages.[4] There are certain well recognized exceptions to this rule, recognized by all the authorities. The exception to the general rule is where the possibility of the intervening, negligent act should have been foreseen by the original wrongdoer, but as stated by Judge Cardozo in the Palsgraf case, supra: "Even then, the orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty."

A great number of courts have considered the question whether a trespasser's wrongful act in removing explosives which have been negligently left about and thereafter result in injury to third parties constitutes an efficient, intervening cause so as to become the proximate cause of the injuries to such third parties and by such intervention removes the original negligent handling of explosives as the proximate cause of the injury. These cases generally fall into two classifications: Those in which the trespassers were immature children of limited comprehension and understanding,[5] and those in which the trespassers were adults of ordinary intelligence and understanding.[6]

In the first class of cases, it is generally held that the wrongful act of an immature trespasser because of his immaturity and lack of understanding is not an efficient, intervening cause and that the original wrongdoer should have realized that the

3. Flaharty v. Reed, 167 Kan. 319, 205 P.2d 905; Rowell v. City of Wichita, 162 Kan. 294, 176 P.2d 590; Haggard v. Lowden, 156 Kan. 522, 134 P.2d 676.
4. Atchinson T. & S. F. Ry. Co. v. Calhoun, 213 U.S. 1, 29 S.Ct. 321, 53 L.Ed. 671; Flaharty v. Reed, supra; Rowell v. City of Wichita, supra.
5. Diehl v. A. P. Green Fire Brick Co., 299 Mo. 641, 253 S.W. 984; Kansas City ex rel. Barlow v. Robinson, 322 Mo. 1050, 17 S.W.2d 977; Lone Star Gas Co. v. Parsons, 159 Okl. 52, 14 P.2d 369; Mathis v. Granger Brick & Tile Co., 85 Wash. 634, 149 P. 3; Lee v. Georgia Forest Products Co., 44 Ga.App. 850, 163 S.E. 267; Mills v. Central of Georgia Ry. Co., 140 Ga. 181, 78 S.E. 816, Ann.Cas.1914C, 1098; Luhman v. Hoover, 6 Cir., 100 F.2d 127; Harriman v. Pittsburgh, C. & St. L. R. Co., 45 Ohio St. 11, 12 N.E. 451, 4 Am.St.Rep. 507; Butrick v. Snyder, 236 Mich. 300, 210 N.W. 311; Vills v. City of Cloquet, 119 Minn. 277, 138 N.W. 33; Vallency v. Rigillo, 91 N.J.Law 307, 102 A. 348; Town of Depew, Creek County v. Kilgore, 117 Okl. 263, 246 P. 606; Smith v. Smith-Peterson Co., 56 Nev. 79, 45 P. 2d 785, 100 A.L.R. 440; Olson v. Gill Home Investment Co., 58 Wash. 151, 108 P. 140, 27 L.R.A.,N.S., 884.
6. Hale v. Pacific Telephone & Telegraph Co., 42 Cal.App. 55, 183 P. 280; Kennedy v. Independent Quarry & Construction Co., 316 Mo. 782, 291 S.W. 475; Perry v. Rochester Line Co., 219 N.Y. 60, 113 N.E. 529, L.R.A.1917B, 1058.

young and immature who have access to the premises might come into possession of such explosives, carry them away, and thereby cause injury to themselves or others. Since the original wrongdoer was bound to anticipate such an act, it was in the range of reasonable expectations and becomes merely an anticipated link in the chain of causation which he set into motion and which resulted in the injury complained of.

In the class of cases set out in footnote 6, it is generally held that the original wrongdoer was not bound to anticipate that an adult of ordinary intelligence and understanding would commit a trespass and remove property to which he had no right, and that therefore his wrongful act was not within the range of reasonable expectation.

Since these cases arose in Kansas, the decisions of its courts are controlling. An examination of the Kansas cases impels the conclusion that it adheres to the general principle of the law outlined above. In Rowell v. City of Wichita, et al., 162 Kan. 294, 175 P.2d 590, 595, the Supreme Court reaffirmed its adherence to these principles by stating that: "A person who seeks redress does not make out a cause of action by showing only that he suffered injury, but if not wilfully done he must show that the act as to him, had possibilities of danger so apparent as to entitle him to be protected against the doing of it although the harm was unintended."

And in the early case of Atchison, T. & S. F. R. Co. v. Stanford, 12 Kan.* 354, 377, 15 Am.Rep. 362, the court said: "A wrongdoer is not merely responsible for the first result of his wrongful act, but he is also responsible for every succeeding injurious result which could have been foreseen, by the exercise of reasonable diligence, as the reasonable, natural and probable consequence of his wrongful act."

In the later case of Flaharty v. Reed, 167 P. 319, 205 P.2d 905, the court again said that: "If an intervening act was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate or legal cause of the injury, notwithstanding the intervening act."

We think it must be said from the decisions, as well as from sound logic, that it was not within the range of reasonable expectation of the Government and its agents to anticipate that Schmidt, whose right on the premises was limited to cutting hay, would become a trespasser and take and remove property to which he had no right. Suppose these bazooka shells had been piled in a pile in a corner of the fence or had been placed on a platform or had been stored in an unlocked building. Would the Government be liable if Schmidt went to the pile or to the platform or into the building and removed them as souvenirs? Since the Government was not required to anticipate that Schmidt, an adult of ordinary understanding, would commit a trespass, it was not required to guard against the same and is not liable to the plaintiffs for the injuries suffered from Schmidt's wrongful act in removing property to which he had no right. Schmidt's conduct alone was the sole, proximate cause of appellants' injuries.

The case of Clark v. E. I. DuPont de Nemours Powder Co., 94 Kan. 268, 146 P. 320, L.R.A.1915E, 479, Ann.Cas.1917B, 340, is clearly distinguishable upon the facts. It is a good illustration of the principle that the original wrongdoer was liable for an intervening act which as a reasonable person he should have understood was liable to follow. In that case the Powder Company was employed to shoot an oil and gas well on premises not belonging to it. After the well was shot, an employee carelessly left about a quart of solidified nitroglycerine near the well. Joe McDowell, a son of the owner of the farm and an employee of the Drilling Company, saw the explosive lying there, and fearing that it would cause injury to himself or his fellow workers who were still busy about the well, carried it home with him, and upon instructions from one of his parents to get rid of it, took the same to an abandoned grave yard on the farm and attempted to hide it in a crevice in a stone fence.

Two years later it was discovered by some boys, and not knowing the nature of the material, they struck it with a rock which caused an explosion which injured the plaintiffs in that case. The Supreme Court held that the acts of McDowell did not constitute an independent, intervening cause and held that the injuries suffered by the plaintiffs were the natural and probable consequences of the original act of negligence on the part of the Powder Company in leaving this dangerous instrumentality lying about. The Supreme Court quoted with approval from the decision of the Massachusetts Court in Stone v. Boston & A. Ry. Co., 171 Mass. 536, 51 N.E. 1, 41 L.R.A. 794, to the effect that it was the duty of the original wrongdoer to provide against the intrusion of an intervening agency where such intervention was a thing likely to happen in the ordinary course of events, and that negligence on the part of the intervening agent was the negligence of the original wrongdoer. Clearly, The Powder Company was negligent in permitting the dangerous explosive to remain undisposed of on the premises of others. It was its duty to dispose of it. It knew that if it failed to discharge this duty, someone else of necessity must do so. The act of McDowell, the intervening agency, was, therefore, a necessary step in a chain of causation which the Powder Company set in motion by negligently leaving the dangerous explosive lying about undisposed of, and his negligence was its negligence, the proximate cause of the injury.

In these cases the shells were at most dangerous to those working on the Reservation; they were not dangerous to anyone else, and certainly not to someone living one hundred miles away. From all the authorities, as well as from sound logic, it must be said that the Government could not reasonably anticipate that an adult, mature man of ordinary intelligence, who was on the reservation under a license for a specific purpose would commit a trespass and wilfully take with him to his home property which he had no right to take. Schmidt's unlawful act was therefore an independent, intervening act which alone was the proximate cause of the injury.

We do not specifically analyze the many cases cited by appellant. To do so would not change the result and would only unduly extend this opinion.

The several judgments appealed from are affirmed.

MURRAH, Circuit Judge (dissenting).

My brethren apparently assume for the purpose of their ultimate conclusion, as did the trial court, that the Government was negligent in failing to remove the explosive shell from the place where the licensees were apt to come upon it while harvesting the hay on the reservation. But they say that such negligence did not extend to these children because the Government could not reasonably anticipate or foresee that the father of the children, also a licensee, would pick up the shell and carry it ninety miles to his home, where his curious and unsuspecting children would be attracted to it. As to them, they say, the Government owed no actionable duty. Otherwise stated, the negligence was not the proximate cause of the harm, because the father's intervening act of negligence cut off and removed the Government's original act of negligence. They recognize, however, that to exculpate the Government, the intervening negligent act must not have been within the range of the Government's apprehension or foreseeability. As to that, they say that the taking of the shell by the farmer from the Government reservation amounted to a trespass, and that the Government could not reasonably foresee that a licensee would remove the shell, carelessly left on the reservation, to his home, where the children would eventually come into contact with it.

At this point we disagree. In the first place, I cannot agree that the father was a trespasser in any sense of the word, or that if he was negligent, such negligence was, in the language of the Kansas court, "an efficient intervening cause". Admittedly, he was rightfully on the premises. While there he came upon an article

which was apparently useless and valueless, and to him harmless. This is so, else it would not have been in the place where it was found. Obviously, if it had been of any value to the Government, it would not have been found lying upon the ground, unguarded, and abandoned. There is no evidence that it was taken secretly, surreptitiously or wrongfully. Certainly no one would be prompted to take such an article for its value, or for any purpose other than mere curiosity.

Moreover, the adjudicated cases, and there are many, involving the negligent use or storage of explosives, in which acts of third parties have intervened between the defendant's wrong and the plaintiff's injury, indicate an unmistakable tendency to insulate or exculpate the defendant only if the third party is an intentional wrongdoer.[1] It is not enough that the innocent though negligent act of a parent intervened. Diehl v. A. P. Green Fire Brick Co., 299 Mo. 641, 253 S.W. 984; Mathis v. Granger Brick & Tile Co., 85 Wash. 634, 149 P. 3; May 1949 Harv. L. R.

1246. Contra: Pittsburg Reduction Co. v. Horton, 87 Ark. 576, 113 S.W. 647, 18 L.R. A., N.S., 905.

To me, this case is no different than the Clark-Powder Company case. There the Kansas court had no difficulty holding that the third person's act of removing the explosive from where the defendant had negligently left it, to a point where it was found by small children two years later, was not an efficient intervening cause. We need only to equate time to space to draw cogent analogy between the two cases. If law is experience as recorded by adjudicated cases, it teaches us that the result of leaving this explosive shell in an unguarded place, where it is apt to be picked up by the curious and unsuspecting, is not improbable but commonplace. Things that are commonplace are certainly within the range of apprehension. Whether considered within the range of apprehension or as the proximate cause, I would hold that the complaint states a claim on which relief can be granted, and accordingly reverse the case.

1. Cases in which intentional wrongdoer insulated defendant. Hale v. Pac. Tele. & Telegraph Co., 42 Cal.App. 55, 183 P. 280; Kennedy v. Independent Quarry & Construction Co., 316 Mo. 782, 291 S.W. 475; Perry v. Rochester Lime Co., 219 N.Y. 60, 113 N.E. 529, L.R.A.1917B, 1058; Murphy v. City of Rotan, Tex. Civ.App.1940, 139 S.W.2d 134.

Cases in which unintentional wrongdoer or non-wrongdoer failed to insulate defendant. Where acts of children are combined with action or non-action by adults: Clark v. E. I. Du Pont de Nemours Powder Co., 94 Kan. 268, 146 P. 320, L.R.A.1915E, 479, Ann.Cas. 1917B, 340; Diehl v. A. P. Green Co., 299 Mo. 641, 253 S.W. 984; Kansas City ex rel. Barlow v. Robinson, 322 Mo. 1075, 17 S.W.2d 977; Kingsland v. Erie County Agr. Soc., 298 N.Y. 409, 84 N.E.2d 38; Lone Star Gas Co. v. Parsons, 159 Okl. 52, 14 P.2d 369; Mathis v. Granger Brick & Tile Co., 85 Wash. 634, 149 P. 3. Where acts are by children only: Luhman v. Hoover,

6 Cir., 100 F.2d 127; Mills v. Central of Ga. Ry. Co., 140 Ga. 181, 78 S.E. 816; Terrell v. J. F. Giddings & Son, 28 Ga.App. 697, 112 S.E. 914, Lee v. Ga. Forest Products Co., 44 Ga.App. 850, 163 S.E. 267; Butrick v. Snyder, 236 Mich. 300, 210 N.W. 311; Vills v. City of Cloquet, 119 Minn. 277, 138 N.W. 33; Smith v. Smith-Peterson Co., 56 Nev. 79, 45 P.2d 785; Vallency v. Rigillo, 91 N.J.Law 307, 102 A. 348; Harriman v. Pitt Co. & St. L. R., 45 Ohio St. 11, 12 N.E. 451; Folsom-Morris Coal Mining Co. v. DeVork, 61 Okl. 75, 160 P. 64, L.R.A.1917A, 1290; City of Tulsa v. McIntosh, 90 Okl. 50, 215 P. 624; Town of Depew, Creek County v. Kilgore, 117 Okl. 263, 246 P. 606; Akin v. Bradley Engineering & Machinery Co., 48 Wash. 97, 92 P. 903, 14 L.R.A.,N.S., 586; Olson v. Gill Home Investment Co., 58 Wash. 151, 108 P. 140.

See also Restatement, Torts, Sections 442–452 and 522.