

# SUPREME COURT OF MISSOURI
## en banc

YOLANDA BELL, )
                         )
                 Appellant, )
                         )
v. )
                         )
SHELTER GENERAL INSURANCE )
COMPANY, )
                         )
                 Respondent. )

*Opinion issued November 19, 2024*

No. SC100461

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### The Honorable John Torrence, Judge

Yolanda Bell appeals the circuit court's judgment dismissing without prejudice her class action petition alleging Shelter General Insurance Company breached its contractual duties under the insurance policy issued to Bell and all others similarly situated. This Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution. Bell's petition alleged Shelter breached its contractual obligations by failing to include in its payments upon the loss of an insured vehicle the taxes and fees required in acquiring a replacement vehicle. Bell's claim was adequately pleaded; therefore, her petition

survives a motion to dismiss. The circuit court's judgment is reversed, and the case remanded.[1]

## Factual and Procedural Background

Bell obtained an automobile insurance policy through Shelter to cover her vehicle. In February 2018, the vehicle sustained damage, and Bell filed a claim with Shelter under the policy's collision coverage. Shelter elected to pay Bell the vehicle's comparable value after determining it was a total loss.[2] Shelter determined the vehicle's value to be $12,026. After adding $11 in fees and subtracting the policy's $250 deductible from the total value, Shelter paid Bell $11,787. This payment did not include the taxes and fees necessary to acquire ownership of a replacement vehicle.

In February 2022, Bell filed a class action suit alleging Shelter breached its contractual duties in failing to pay her and all similarly situated insureds the taxes and fees she argues are owed under the policy. Bell did not claim that she acquired a replacement vehicle or that she actually paid taxes and fees. Rather, Bell alleged the policy does not mention or otherwise require a policyholder to first replace the vehicle before being reimbursed for taxes and fees.

---

[1] As a threshold matter, Shelter argues this Court should dismiss Bell's appeal because she untimely filed her amended brief in the court of appeals without a valid excuse. This Court denies Shelter's request, as did the court of appeals, and permits Bell's appeal to proceed given the strong preference to resolve matters on the merits when possible and the need for clarification about the issue presented. *See City of St. Louis v. State*, 682 S.W.3d 387, 397 n.7 (Mo. banc 2024) (expressing this Court's preference to decide cases on their merits despite technical briefing deficiencies).

[2] The policy's collision coverage provides Shelter "will pay the direct loss resulting from accidental property damage to a described auto if it is caused by" a collision. The policy defines "direct loss" to mean either "comparable value" or "cost to repair."

In support of her claim, Bell cited sections 6(c) and 6(d) of the policy's definition of "comparable value," which provides:

> (6) Comparable value means the depreciated worth of a covered auto or part immediately before the accident; plus the ***reasonable charges*** required to pay for any of the following that apply to the claim:
>
>> (a) ***Incurred*** cost for the necessary towing of a covered auto from the place where the accident occurred;
>>
>> (b) ***Incurred*** cost for necessary storage of a covered auto from the day you make a claim under this policy until we offer to settle that claim;
>>
>> (c) Sales tax or luxury vehicle tax ***you must incur*** to acquire ownership of another auto or part to replace a covered auto or part with one of equal value; and
>>
>> (d) Other taxes or fees ***you must incur*** to acquire ownership of another auto or part to replace a covered auto or part with one of equal value.

(Emphasis added).[3]

Bell asserted Shelter was obligated to pay – as part of the damaged vehicle's comparable value – taxes and fees that she would have to pay in obtaining a replacement vehicle of equal value.[4] When compared to the past tense "incurred" used in sections 6(a) and 6(b), Bell argued sections 6(c) and 6(d), which use the future tense "must incur," necessarily refer to future taxes and fees that could be incurred by the insured.

---

[3]  Bell attached the policy to the petition.

[4] Bell alleged she and other class members would incur Missouri sales tax of 4.225 percent plus local sales tax ranging from 1 to 3.51 percent in purchasing a new vehicle. Bell also outlined various fees one must incur in buying a vehicle in Missouri that Shelter failed to pay: an $8.50 title fee; a registration fee ranging from $18.25 to $51.25; a $6 title processing fee; and a $6 one-year registration fee.

Shelter filed a motion to dismiss arguing Bell failed to state a claim upon which relief may be granted. Shelter argued the policy unambiguously provides coverage for taxes and fees only when an insured actually incurs those charges in acquiring a replacement vehicle. Shelter pointed to section 44 of the policy, which defines the "reasonable charges" included in the payment of comparable value as the lesser of:

> (a) The amount for which we can discharge the insured's entire obligation to the person providing the goods and services; or

> (b) The charges *incurred* for goods and services that, in our judgment, are within the range of charges for the same or similar goods and services, in the geographic area where the services are rendered or the goods are purchased.

(Emphasis added).

Given section 44(b)'s use of the past tense "incurred," Shelter argued it was not obligated to pay taxes and fees as "reasonable charges" unless Bell actually incurred those costs. Because Bell did not plead that she acquired a replacement vehicle or that she paid taxes and fees in doing so, Shelter argued her petition failed to allege any breach of contract occurred.

The circuit court, without explanation, sustained Shelter's motion and dismissed Bell's petition without prejudice.[5] Bell appeals.

---

[5] A "dismissal without prejudice for failure of the petition to state a claim, when the party elects not to plead further, amounts to a determination that the plaintiff has no action." *Mahoney v. Doerhoff Surgical Servs., Inc.*, 807 S.W.2d 503, 506 (Mo. banc 1991). "In such a case, the judgment of dismissal—albeit without prejudice—amounts to an adjudication on the merits and may be appealed." *Id.* Because Bell decided to stand on her petition rather than amending it, her appeal is properly before this Court.

## Analysis

Bell presents one point on appeal. She argues the circuit court erred in dismissing her petition because her allegations were well-pleaded. She asserts she reasonably interpreted the "comparable value" of a vehicle to include the taxes and fees necessary to acquire a replacement vehicle, regardless of whether she actually incurred those fees.

This Court reviews *de novo* a circuit court's decision to sustain a motion to dismiss for failure to state a claim. *Forester v. May*, 671 S.W.3d 383, 386 (Mo. banc 2023). "A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 464 (Mo. banc 2001) (quotation omitted). This Court reviews the petition "in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action or of a cause of action that might be adopted in that case." *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 101 (Mo. banc 2010).

In conducting this review, "this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 424 (Mo. banc 2019) (quotation omitted). Legal conclusions are disregarded. *State ex rel. State Tax Comm'n v. Briscoe*, 451 S.W.2d 1, 3 (Mo. banc 1970). "On a motion to dismiss, [this Court] review[s] the facts only to determine whether they state a claim for relief, not whether [the plaintiff] will ultimately prevail on the relief requested." *In re Estate of Clark*, 83 S.W.3d 699, 705 (Mo. App. 2002).

"A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney*, 304 S.W.3d at 104. A petition alleging facts that meet these elements properly states a claim for breach of contract and survives a motion to dismiss. *See id.* at 101.

The parties disagree as to which facts must be alleged to satisfy the element of breach, given their different interpretations of the contract. Under Bell's theory, she need not have already purchased a replacement vehicle before Shelter was contractually obligated to reimburse her for taxes and fees. As such, she asserts it was sufficient to plead, as she did, simply that Shelter did not pay those costs upon its payment of comparable value. Shelter, however, argues the policy does not require it to pay taxes and fees unless a replacement vehicle is actually purchased and the insured incurs those costs. Shelter argues Bell, therefore, was required to plead that she obtained a replacement vehicle of equal value, paid taxes and fees, and was not reimbursed to establish that Shelter breached its contractual obligations. As a result, the parties argue, whether Bell's petition sufficiently pleaded a breach of contract turns on the correct interpretation of the policy.

The interpretation of an insurance policy is a question of law for the courts, *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007), and legal conclusions as to the meaning of policy provisions are disregarded on review of a motion to dismiss. *Corbin v. Hume-Sinclair Coal Min. Co.*, 237 S.W.2d 81, 82 (Mo. 1951) ("The averments

6

as to the meaning of the contract are not admitted by the motion to dismiss; that is a question for the courts. Facts and not conclusions of law are admitted by the motion to dismiss.").

While contract interpretation is a question of law to be decided by the courts, it would be premature to answer that question definitively on a motion to dismiss, for which the only inquiry is whether the plaintiff has stated a ***cognizable*** claim. *Keveney*, 304 S.W.3d at 101. Bell survives Shelter's motion to dismiss if she adequately pleaded the required elements for a breach of that contract. Whether her construction is actually correct is a matter for summary judgment, judgment on the pleadings, or trial – when the court decides the ***merits*** of adequately pleaded cases.

Bell adequately pleaded a breach of contract claim. Bell's petition alleged: (1) the existence of the Shelter insurance policy between herself (and all class members) and Shelter, requiring, among other things, that Shelter pay all taxes and fees required to replace a vehicle; (2) Bell and all class members made insurance claims determined by Shelter to be covered under the policy; (3) Shelter did not pay or underpaid taxes and fees in paying out those claims; and (4) Bell and all class members are entitled to damages in the amount of taxes and fees, less any amount in taxes and fees Shelter already paid, along with prejudgment and post-judgment interest, costs, and attorney fees. Bell's petition establishes the essential elements for a breach of contract claim.[6]

---

[6] This Court expresses no view about the proper interpretation of the policy, as that is a matter premature for resolution on a motion to dismiss for the reasons previously explained. The circuit court can determine at a future date whether the insurance policy

By construing all allegations favorably to Bell, her, petition is legally adequate to survive a motion to dismiss.[7]

**Conclusion**

For the reasons set forth above, the circuit court's judgment sustaining Shelter's motion to dismiss is reversed, and the case remanded for further proceedings.

_____
Robin Ransom, Judge

Russell, C.J., Powell, and Wilson, JJ., concur;
Fischer, J., dissents in separate opinion filed;
Broniec and Gooch, JJ., concur in opinion of Fischer, J.

---

requires Shelter to pay taxes and fees when a replacement vehicle has not been purchased.

[7] Shelter argues Bell's theory is unworkable in practice and negated by section 144.027.1, RSMo 2016. At the motion to dismiss stage, however, this Court is limited to a review of the allegations in Bell's petition to determine simply if those allegations state a cognizable cause of action. *Bosch*, 41 S.W.3d at 464. Shelter's arguments go beyond the allegations contained in Bell's petition and are premature for a motion to dismiss. *See State ex rel. Clinton No. 1 v. Baker*, No. SC100099, 2024 WL 942543, at *4 (Mo. banc Mar. 5, 2024) ("If the circuit court considers matters outside the pleadings on a motion to dismiss for failure to state a claim upon which relief can be granted, the motion must be treated as one for summary judgment, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 74.04." (quotations and alterations omitted)).



# SUPREME COURT OF MISSOURI
## en banc

YOLANDA BELL,              )
                                     )

           Appellant,    )
                                     )

v.                              )     No. SC100461
                                     )

SHELTER GENERAL INSURANCE   )
COMPANY,                     )
                                     )

           Respondent.   )

## DISSENTING OPINION

I respectfully dissent. The principal opinion holds Yolanda Bell stated a claim for breach of contract because Shelter General Insurance Company declined to pay her for sales taxes and fees on a replacement vehicle she never purchased. The insurance contract, however, unambiguously obligates Shelter to pay only the "reasonable charges" Bell actually "incurred." Bell did not allege she actually incurred sales taxes or fees from the purchase of a replacement vehicle; therefore, she failed to allege the ultimate facts necessary to state a claim that Shelter breached the contract. The circuit court correctly sustained Shelter's motion to dismiss. The judgment should be affirmed.

## Fact Pleading

"Missouri is a fact-pleading state." *Matthews v. Harley-Davidson*, 685 S.W.3d 360, 366 (Mo. banc 2024). Accordingly, Rule 55.05 requires a petition to contain "a short and plain statement of ***the facts*** showing that the pleader is entitled to relief[.]" (Emphasis added). This requires the plaintiff to allege the "ultimate facts" necessary to return "to return a verdict for the plaintiff." *Matthews*, 685 S.W.3d at 366.

This Court's review of a motion to dismiss mirrors the fact-pleading requirement of Rule 55.05. Thus, "[a] motion to dismiss for failure to state a claim on which relief can be granted is solely a test of the adequacy of the petition" in which "this Court reviews the petition to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Id.* (internal quotation omitted). Bell's petition fails at this juncture.

## The Pleadings

To state a claim for breach of contract, Bell had to plead ultimate facts that, if true, would establish: (1) the existence and terms of a contract; (2) Bell's performance under the contract; (3) Shelter's breach of the contract; and (4) damages. *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010). Bell pleaded that she and "every Class Member were owed the sales tax and fees as part of their loss payment" and that Shelter breached the insurance contract by "failing to include sales tax and all fees in the loss claim payments" to her and other class members.[1] In its motion to dismiss, Shelter asserted Bell

---

[1] Bell also pleaded the insurance contract "does not mention or otherwise require consumers like Plaintiff to first replace their vehicles before being reimbursed sales tax and fees." The plain

2

failed to plead facts showing Shelter breached its contractual obligation to pay sales taxes or fees actually incurred by Bell or any class members due to their purchase of a replacement vehicle. When, as in this case, "the circuit court does not specify reasons for dismissing a petition, this Court presumes that the circuit court's judgment is based on one of the reasons stated in the motion to dismiss." *Reed v. Reilly Co., LLC*, 534 S.W.3d 809, 811 (Mo. banc 2017) (internal alteration and quotation omitted). The dispositive issue, therefore, is whether the fact Bell actually incurred sales taxes and fees is an ultimate fact necessary to show Shelter breached its contractual obligations.

### Shelter's Contractual Obligations Are a Purely Legal Issue

The legal obligations of contracting parties are defined by their contract. *Brewer v. Mo. Title Loans*, 364 S.W.3d 486, 490 n.2 (Mo. banc 2012). Because Shelter's legal obligations to Bell are defined contractually, determining whether Bell must plead the ultimate fact that she actually incurred sales taxes and fees necessarily requires this Court to answer the purely legal question of whether the insurance contract obligates Shelter to pay sales taxes and fees. *See Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO, Council 61 v. State*, 653 S.W.3d 111, 127 (Mo. banc 2022) (stating the general rule that "[c]ontract interpretation is a question of law" subject to *de novo* review). In other words, Bell's argument on appeal that Shelter breached the contract by not paying sales taxes and fees

---

meaning of the word "reimburse" is "to pay back (an equivalent for something taken, lost, or expended) to someone" or "to make restoration or payment of an equivalent to." *Reimburse, Webster's Third New International Dictionary* (3d ed. 2002). It is impossible for Shelter "to pay back" or "make restoration" of sales taxes and fees Bell never incurred in the first place.

3

rests on the implicit legal conclusion Shelter was contractually obligated to pay those fees and taxes.[2]

Instead of resolving the purely legal issue of Shelter's contractual obligations, the principal opinion concludes, with no citation to authority, that determining whether Bell's construction of the contract is correct is a matter for summary judgment, judgment on the pleadings, or trial. The principal opinion offers no reason why this purely legal issue cannot be resolved on a motion to dismiss, and none is apparent. Shelter's contractual obligations are set by the contractual language presently before this Court, and those obligations will not change on the same *de novo* review of the contract language following a motion for summary judgment, a motion for judgment on the pleadings, or a trial.

For more than a century, Missouri courts have resolved purely legal issues on a motion to dismiss, including issues of contract interpretation. For instance, in *Blaine v. George Knapp & Co.*, 41 S.W. 787, 788 (Mo. 1897), this Court held that when, as in this case, the contract is attached to the petition, allegations "as to the meaning of the contract

---

[2] The principal opinion cites *Keveney* for the proposition that the only relevant inquiry is whether Bell stated a "cognizable" claim. *Keveney* does not limit this Court's authority to resolve a purely legal issue in the context of a motion to dismiss. To the contrary, the "dispositive issue" regarding the motion to dismiss in *Keveney* was the purely legal issue of whether to adopt a cause of action allowing a contract employee to "pursue a claim for wrongful discharge in violation of public policy." *Keveney*, 304 S.W.3d at 102. This Court resolved that legal issue by holding for the first time that Missouri law recognized a contract employee may pursue a claim for wrongful discharge in violation of public policy. *Id*. at 103. Moreover, after establishing a new cause of action under Missouri law, this Court analyzed the plaintiff's factual allegations in light of his statutory obligations to report suspected child abuse and to refrain from certain illegal acts. *Id*. at 104. Similar to this case, the ultimate facts underlying the wrongful discharge claim in *Keveney* were defined by a party's legal obligations to undertake certain actions. *Keveney* does not support the principal opinion's view of this Court's role in resolving legal issues in the context of a motion to dismiss, a view that promotes judicial inefficiency and wasted resources in unnecessarily prolonging the process of deciding purely legal issues.

4

are not admitted by the demurrer; that is a question for the court."[3]  Consistent with the self-evident proposition that courts do not defer to a party's legal conclusions,[4] *Blaine* establishes the circuit court was not bound to accept as true Bell's implicit legal conclusion that Shelter was obligated to pay her for sales taxes and fees she never incurred.  *Blaine* has never been overruled and remains good law.

The line between *Blaine* and this Court's recent jurisprudence is clear.  Within the last year, this Court issued writs of prohibition after circuit courts overruled motions to dismiss raising the purely legal issues of whether a defendant owed a legal duty of care, *State ex rel. Tyler Techs., Inc. v. Chamberlain*, 679 S.W.3d 474, 477-78 (Mo. banc 2023), and whether a defendant was entitled to official immunity, *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 469-71 (Mo. banc 2023).  In both cases, this Court resolved purely legal issues in the context of a motion to dismiss.  As in *Chamberlain* and *Alessi*, this Court should, and, in this case, must determine Shelter's contractual obligations to determine whether Bell's factual allegations state a claim for breach of contract.[5]  This Court should

---

[3] A motion to dismiss is the modern analog to a demurrer and "performs the same function." *Baysinger v. Hanser*, 199 S.W.2d 644, 645-46 (Mo. 1947); *see also Jewell Realty Co. v. Dierks*, 18 S.W.2d 1043, 1045 (Mo. banc 1929) (holding that, "[i]n ruling a demurrer to a petition, all facts well pleaded will be accepted as true, but the pleader's conclusions on such facts will not be so accepted").

[4] The core function of courts is to determine legal issues. *Gershman Inv. Corp. v. Danforth*, 517 S.W.2d 33, 35 (Mo. banc 1974) (citing Mo. Const. art. V, sec. 1) (explaining the state constitution vests in courts the judicial power of the state, and "[t]he courts declare the law").

[5] Like *Blaine*, *Chamberlain*, and *Alessi*, the court of appeals consistently holds the plaintiff's legal conclusions are not binding in the context a motion to dismiss. *See McConnell v. W. Bend Mut. Ins. Co.*, 606 S.W.3d 181, 190 (Mo. App. 2020) (reiterating the longstanding, uncontested proposition that, while factual allegations are assumed true, the plaintiff's "legal conclusions are not considered in determining whether a petition states a claim upon which relief can be granted" (internal quotation omitted)); *Hendricks v. Curators of Univ. of Mo.*, 308 S.W.3d 740, 747 (Mo.

5

follow its precedent and determine the purely legal issue of Shelter's contractual obligations.

## Bell Failed to State A Claim

Turning to Shelter's contractual obligations, there is no dispute Bell's vehicle was a total loss and Shelter is obligated to pay Bell the "comparable value" of her vehicle. The insurance contract defines "comparable value" as follows:

> (6) ***Comparable value means the depreciated worth of a covered auto*** or part immediately before the accident; ***plus the reasonable charges required to pay*** for any of the following that apply to the claim:
>
> (a) Incurred cost for the necessary towing of a covered auto from the place where the accident occurred;
>
> (b) Incurred cost for necessary storage of a covered auto from the day you make a claim under this policy until we offer to settle that claim;
>
> (c) Sales tax or luxury vehicle tax ***you must incur to acquire ownership of another auto*** or part to replace a covered auto or part with one of equal value; and
>
> (d) Other taxes or fees ***you must incur to acquire ownership of another auto*** or part to replace a covered auto or part with one of equal value.

(Emphasis added).

The contract plainly obligates Shelter to pay the "reasonable charges required to pay" costs incurred for towing and storage as well as taxes and fees the insured "must incur to acquire ownership of another auto[.]" The term "reasonable charges" means:

> [T]he lesser of:

---

App. 2010) (recognizing "the circuit court was not required to accept as true" the legal conclusion that defendant waived sovereign immunity).

6

The amount for which we can discharge the insured's entire obligation to the person providing the goods and services; or

The charges *incurred* for goods and services that, in our judgment, are within the range of charges for the same or similar goods and services, in the geographic area where the services are rendered or the goods are purchased.

Considered as a whole, the contract obligated Shelter to pay the "reasonable charges" that Bell actually "incurred," including the taxes and fees incurred if she elected to "acquire ownership of another auto." Bell did not plead she incurred any charges for sales taxes or fees by acquiring ownership of another vehicle. Therefore, she failed to plead the ultimate fact necessary to state a claim Shelter breached its contractual obligation to pay sales taxes and fees.

Against this straightforward construction, Bell argues the references in sections 6(c) and 6(d) to sales taxes and fees "you must incur to acquire ownership of another auto" imply Shelter is obligated to pay sales taxes and fees even when the insured incurred no actual sales taxes or fees. This legal conclusion is incorrect because the reference to taxes and fees "you must incur" is plainly contingent on the acquisition "of another auto[.]" This means that when, as in this case, the insured does not acquire ownership of another automobile, there are no sales taxes or fees the insured must incur and, accordingly, there are no sales taxes or fees Shelter is required to pay. As established, the definition of "reasonable charges" confirms this common-sense reading by expressly limiting Shelter's obligation to "charges *incurred* for goods and services[.]" (Emphasis added). The fallacy of Bell's legal argument, and the principal opinion's implicit approval of it, leads inevitably to the incorrect conclusion Bell stated a claim for relief based on factual allegations that

7

cannot possibly show that Shelter breached the contract by declining to pay Bell for sales taxes and fees she never incurred.

## Conclusion

The circuit court did not err by entering the judgment dismissing Bell's petition.  The judgment should be affirmed.

_____
Zel M. Fischer, Judge
